<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MARLON D. HARGIS, JR.,                :
                                      :   Civil Action No. 10-1006 (JBS)
                    Plaintiff,        :
                                      :
                                      :
            v.                        :   **OPINION**
                                      :
ATLANTIC COUNTY JUSTICE               :
FACILITY, et al.,                     :
                                      :
                    Defendants.       :

**APPEARANCES:**

 MARLON D. HARGIS, JR., Plaintiff <u>pro</u> <u>se</u>
 #177513
 Atlantic County Justice Facility
 5060 Atlantic Avenue
 Mays Landing, New Jersey 08330

**SIMANDLE**, District Judge

 Plaintiff, Marlon D. Hargis, Jr., a state inmate currently
confined at the Atlantic County Justice Facility in Mays Landing,
New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>.  Based
on his affidavit of indigence and the absence of three qualifying
dismissals within 28 U.S.C. § 1915(g), the Court will grant
plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP")
pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the
Court to file the Complaint.

At this time, the Court must review the Complaint and amended Complaint,[1] pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.  BACKGROUND

Plaintiff, Marlon D. Hargis, Jr. ("Hargis"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: the Atlantic County Justice Facility ("ACJF"); the Warden at ACJF; Dennis Levison, Atlantic County Executive; the Atlantic City Freeholders of Atlantic County, namely, Mr. Cooper, Mr. Circio, Mr. Finner, Mr. Kelly, Mr. Nelson, Mr. Russo, Mr. Schilling, Mr. Sutton, and Mr. Filipina; the Atlantic County Health and Sanitation Department; the New Jersey Department of Corrections ("NJDOC") County Jail Inspection; the ACJF Law Library staff; Aramark Correctional Service, LLC; and the Atlantic County Chief Fire Inspector (and all Chief Inspectors responsible for the ACJF).  (Complaint and amended Complaint, Caption and ¶¶ 3-18).  The following factual

---

[1]  Plaintiff filed an amended Complaint (docket entry no. 2), as of right, before an answer was filed in this matter, on or about April 5, 2010.  See Fed.R.Civ.P. 15(a).  Plaintiff also filed a motion for preliminary injunctive relief on April 21, 2010.  (Docket entry no. 3).

allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Hargis alleges that he has been confined at the ACJF since August 12, 2009, and has been subject to unconstitutional conditions of confinement.  Hargis alleges that he is a pretrial detainee and is housed in a one-man cell with two other inmates. The cell is approximately 7 feet by 5 feet, or 35 square feet in size, which restricts Hargis' movement.  He also complains that he is forced to sleep on a mattress on the floor only 13 inches from the toilet.  Hargis states that he is frequently exposed to the odor, urine, feces and other bodily fluids of the other persons using the toilet, and that both he and his mattress are often splashed with toilet water when the toilet is being used.

Hargis states that the ACJF was originally designed to hold 398 inmates, and is now housing more than 1000 inmates on a daily basis.  Many inmates are forced to sleep in the multipurpose dayroom, which is used by 65 to 75 inmates for eating, television, and recreational activities, etc.  There are only four tables and 16 chairs for 65 to 75 inmates to use. Consequently, Hargis often has to eat in his cell by the toilet.

Plaintiff further complains that the food served the inmates at the ACJF does not meet nationally accepted nutritional standards or recommended daily food allowances.  The food is

served cold, diluted, watered down, and adulterated so as to provide for the excessive number of inmates housed at the ACJF. The food is often spoiled, and the trays and juice containers used are dirty.  Hargis also alleges that defendant Aramark shortchanges the food served to the inmates so that they are forced to spend money at the commissary for food items, which are set at a price much higher than the normal cost charged in stores outside the jail.

Next, Hargis contends that the law library and the library staff at the ACJF are inadequate and fail to provide access to the courts.  He states that there is a 50-page limit for legal research and cases per week for each inmate.  The staff also does not send plaintiff the requested information.  For instance, when Hargis asked for a habeas form, he received a bail reduction form instead.  Hargis alleges that legal research is often delayed and the case law received is not relevant.  Inmates must make their requests for legal research to the case worker who is responsible for transmitting the on-line legal research on Westlaw. Consequently, the person conducting the research is not trained in the law.  Finally, Hargis claims that his federal habeas case filed in this Court, Hargis v. Cohen, Civil No. 10-695 (JBS), was

dismissed because he did not have adequate access to the law library.[2]

Hargis also asserts that defendants have failed to adequately inspect the ACJF to ensure that the facility meets federal, state and local requirements. As a consequence of this failure to inspect, the inmates, in particular Hargis, are exposed to unsanitary, unhealthy, unsafe, and substandard living conditions.

For relief, Hargis seeks an Order enjoining defendants from subjecting him to such unconstitutional conditions of confinement. Specifically, he seeks an injunction enjoining defendants from confining plaintiff to a triple-inmate cell, from having to pay the monthly assessment charge, to provide food that meets the minimum daily nutritional needs of plaintiff, and to stop placing limits on legal research and other legal information provided to plaintiff. Hargis also asks for an unspecified amount in damages, and awarding him attorneys' fees and costs of suit.

On or about April 21, 2010, Hargis filed a motion for a preliminary injunction. He asks that defendants be ordered to

---

[2]  The Court notes that plaintiff's habeas case was still pending before this Court at the time Hargis submitted his Complaint and amended Complaint for filing. As of today's date, this Court's separate Opinion and Order in Hargis v. Cohen, Civ. No. 10-695 (JBS), is dismissing Mr. Hargis' petition under 28 U.S.C. § 2254, and alternatively under 28 U.S.C. § 2241, without prejudice due to his failure to exhaust state court remedies.

remove all third bunks from the cells at ACJF, and assign only one pretrial detainee per cell.  (See Docket entry no. 3).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court

need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Recently, the Supreme Court revised the standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  <u>Id</u>.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Fed.R.Civ.P.</u> 8(a)(2).[3]  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'

---

[3]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." <u>Fed.R.Civ.P.</u> 8(d).

"Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the

Supreme Court identified two working principles underlying the

failure to state a claim standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  Fed.
> Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must

now allege "sufficient factual matter" to show that a claim is

facially plausible.  This then "allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in

8

Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[4] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

---

[4]   In Conley, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Hargis brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, Hargis names the ACJF and the NJDOC as defendants in this matter.  The NJDOC must be dismissed from this action pursuant to the Eleventh Amendment.  The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."  As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Additionally, the NJDOC and the ACJF must be dismissed from this lawsuit because they are not "persons" subject to liability under § 1983.  See Grabow v. Southern State Correctional

11

<u>Facility</u>, 726 F. Supp. 537, 538-39 (D.N.J. 1989)(correctional facility is not a "person" under § 1983).

IV.   <u>ANALYSIS</u>

A.   <u>Access to Courts Claim</u>

This Court first considers Hargis' allegations that he has been denied access to the courts in violation of his First and Fourteenth Amendment rights.  Courts have recognized different constitutional sources for the right of access to the courts. Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[5]  The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  <u>Bounds v. Smith</u>, 430 U.S. 817, 822 (1977).  In other words, prison

_____

[5]  The right of access to the courts is an aspect of the First Amendment right to petition.  <u>McDonald v. Smith</u>, 472 U.S. 479, 482 (1985); <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See</u> <u>also</u>, <u>Hudson v. Palmer</u>, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); <u>Bounds v. Smith</u>, 430 U.S. 817 (1977); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." Id. at 825.  "'[T]he touchstone ... is meaningful access to the courts.'" Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting* Bounds, 430 U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges. See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000).

13

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  Lewis, 518 U.S. at 351.

Here, Hargis fails to allege any actual injury as a result of the alleged inadequacy of the law library.  He does not allege that he was unable to file this or any other complaint in the courts, and in fact, he has not been limited in filing the instant action, or his federal habeas petition.  Instead, Hargis merely alleges that his federal habeas action, Hargis v. Cohen, Civil No. 10-695 (JBS) was dismissed because of inadequate legal information.  However, Hargis' habeas action was still pending at the time he filed his amended Complaint.  Moreover, while the habeas action has today been dismissed for failure to exhaust state court remedies, any such dismissal is not the result of an allegedly inadequate law library, and such dismissal necessarily

14

would be without prejudice.  (See Hargis v. Cohen, 10-695(JBS)).
Accordingly, any dismissal of the federal habeas action on these
grounds, without prejudice, would not support a claim of actual
injury.

Furthermore, Hargis does not articulate how the allegedly
inadequate law library has hindered his efforts to either pursue
this claim, his pending federal habeas petition, or defend
himself in any pending state proceedings.  Therefore, his claim
alleging denial of access to the courts based on an alleged
failure to provide an adequate law library will be dismissed
without prejudice for failure to state a claim at this time.[6]

B.  Conditions of Confinement Claims

Hargis next asserts that the conditions of his confinement
are unconstitutional and violate both the Eighth and Fourteenth
Amendments.  Having reviewed Hargis' allegations, this Court will
allow said claims to proceed at this time.

---

[6]  Hargis may seek leave to amend his Complaint to allege
facts to show actual injury, other than the dismissal of his
federal habeas petition, Hargis v. Cohen, Civil No. 10-695 (JBS),
if he can do so.  To the extent that plaintiff chooses to amend
his Complaint to cure the deficiencies noted herein, pursuant to
Federal Rule of Civil Procedure 15, Hargis should note that when
an amended complaint is filed, the original complaint no longer
performs any function in the case and "cannot be utilized to cure
defects in the amended [complaint], unless the relevant portion
is specifically incorporated in the new [complaint]." 6 Wright,
Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.
1990) (footnotes omitted).  An amended complaint may adopt some
or all of the allegations in the original complaint, but the
identification of the particular allegations to be adopted must
be clear and explicit.  Id.  To avoid confusion, the safer course
is to file an amended complaint that is complete in itself.  Id.

"The Eighth Amendment to the United States Constitution prohibits any punishment which violates civilized standards and concepts of humanity and decency." Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), superseded on other grounds by 42 U.S.C. § 1997e(a). A prisoner does not lose this protection despite a prison sentence, for "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In order to establish a claim under the Eighth Amendment based on conditions of confinement, the Supreme Court has set forth a two-part test with objective ("Was the deprivation sufficiently serious?") and subjective ("Did the officials act with a sufficiently culpable state of mind?") components. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective element requires a prisoner to show that his living conditions amounted to a "serious deprivation of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The subjective element demands that the prisoner demonstrate "that prison officials acted or failed to act with deliberate indifference." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

With regards to the objective prong, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 347. "To the extent that such conditions are harsh, they are part of the penalty that criminal offenders pay for their offenses against

society." Id. Conditions of confinement for convicted criminals are unconstitutional only when they "deprive inmates of the minimal civilized measure of life's necessities." Id. Whether forcing an inmate to sleep on the floor on a mattress meets this standard is the source of conflicting views amongst federal courts. Compare Lareau v. Manson, 651 F.2d 96, 107-08 (2d Cir. 1981)(finding the practice violates the Eighth Amendment), and Thomas v. Baca, 514 F. Supp.2d 1201, 1215-19 (C.D.Cal. 2007) (same), with Sanders v. Kingston, 53 F. App'x 781, 782 (7th Cir. 2002)(holding the Eighth Amendment does not require "elevated beds for prisoners"), and Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986)(same), and Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985)(same). In several unpublished decisions, the district courts of this circuit have found that temporarily forcing inmates to sleep on the floor with a mattress is not, by itself, enough to run contrary to the protections of the Eighth Amendment. Renn v. Taylor, No. 99-765-SLR, 2001 WL 657591 (D.Del. 2001); Dickinson v. Taylor, No. 98-695-GMS, 2000 WL 1728363 (D.Del. 2000); Jackson v. Brewington-Carr, No. 97-270-JJF, 1999 WL 27124 (D.Del.1999); Randall v. City of Philadelphia, No. 86-6300, 1987 WL 14383 (E.D.Pa.1987); Huttick v. Philadelphia Prison System, No. 86-3714, 1986 WL 10558 (E.D.Pa.1986).

The United States Court of Appeals for the Third Circuit recently addressed this practice in the context of a Fourteenth Amendment claim. Hubbard v. Taylor, 538 F.3d 229 (3d Cir.

2008)("Hubbard II").  In Hubbard II, the Third Circuit held that requiring pretrial detainees to sleep on a mattress on the floor in a cell holding three inmates for three to seven months did not constitute punishment in violation of the Fourteenth Amendment. 538 F.3d at 234-35.  The court rejected Lareau's per se ban on the practice and instead considered it "as part of the 'totality of the circumstances within [the] institution.'"  Id. at 235 (quoting Hubbard v. Taylor, 399 F.3d 150, 160 (3d Cir. 2005)("Hubbard I")[7]).  The court then concluded that although the plaintiffs "did spend a substantial amount of time on floor mattresses," they had access to large day rooms and the record did not substantiate plaintiffs' claims that the use of floor mattresses caused disease or led to the splashing of human waste on the plaintiffs. Id.  After noting the efforts made by the jail to improve conditions, the court found "that Plaintiffs were not subjected to genuine privations and hardship over an extended period of time for purposes of their due process claim."  Id.

In this case, Hargis invokes both the Eighth and Fourteenth Amendments, but it is clear, by his very assertion in his Complaint, that he is a pretrial detainee.  For pretrial detainees, conditions of confinement claims are considered under

_____

[7]  Hubbard I is the predecessor to Hubbard II.  In Hubbard I, the Third Circuit remanded plaintiffs' case to the district court to apply the correct standard for a conditions of confinement claim by a detainee under the Fourteenth Amendment. 399 F.3d at 166-67.  The district court subsequently ruled in defendants' favor and plaintiffs appealed, resulting in Hubbard II.   538 F.3d at 230.

the due process clause of the Fourteenth Amendment, rather than
the Eighth Amendment.  See Hubbard I, 399 F.3d at 158.  Because a
suit under the Eighth Amendment requires proof of greater
deprivation than under the Fourteenth Amendment, the Court finds
that Hubbard II applies in reviewing the sufficiency of
plaintiff's allegations concerning the conditions of his
confinement, and finds that Hargis has alleged facts that may be
sufficient to support his claim that the conditions of his
confinement may constitute a serious deprivation of his most
basic human needs.  See Hubbard I, 399 F.3d at 164-65.

    In Hubbard I, the Third Circuit made clear that pretrial
detainees are entitled to greater protection from poor conditions
of confinement under the Fourteenth Amendment than inmates
seeking relief under the Eighth Amendment.[8]  Hubbard I, 399 F.3d
at 165 (" 'Pretrial detainees ... are entitled 'to at least as
much protection as convicted prisoners, so the protections of the
Eighth Amendment would seem to establish a floor of sorts.'")
(internal citations omitted).  With this in mind, the Court finds
that Hargis' allegations indicate that he may have suffered a
worse fate than the plaintiffs in Hubbard II.  See 538 F.3d at
237-39.  Hargis plainly alleges that he is frequently splashed

---

    [8]  In Bell v. Wolfish, the Supreme Court held that whether a
condition of confinement of pretrial detainees violated their
constitutional rights turns on whether the disability is imposed
for the purpose of punishment or whether it is but an incident of
some other legitimate government purpose.  441 U.S. 520, 535-39,
(1979).

with urine, feces, and toilet water while sleeping on the floor for nine months and continuing, longer than the time frame discussed in Hubbard II.  Hargis also alleges, unlike in Hubbard II, that he often must eat in his cell by the toilet because the dayroom is overcrowded and does not provide the space for recreation, dining and other activities outside his cell.  Thus, he allegedly spends most of his time restricted to a small cell with two other inmates with a mattress 13 inches from the toilet.  In addition, Hargis complains that the food served is nutritionally inadequate, often spoiled, diluted, and adulterated, and minimal to sustain an adequate diet for a male adult.  He also adds that the ACJF is unsanitary, unsafe, and fails to meet federal, state and local building inspection requirements.  Consequently, this Court finds that plaintiff's allegations concerning the "totality of circumstances" surrounding his confinement may be sufficient to suggest that he has been "subjected to genuine privations and hardship over an extended period of time for purposes of [his] due process claim."  See Hubbard II, 538 F.3d at 235.  Therefore, the Court will allow the conditions of confinement claims to proceed at this time as against all named defendants, except the ACJF, the NJDOC, and the ACJF law library staff.

C.  Motion for Preliminary Injunction

Hargis also filed a motion for a preliminary injunction.  To secure the extraordinary relief of a preliminary injunction or

TRO, plaintiff must demonstrate that "(1) he is likely to succeed
on the merits; (2) denial will result in irreparable harm; (3)
granting the injunction will not result in irreparable harm to
the defendants]; and (4) granting the injunction is in the public
interest."  Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir.
1998), cert. denied, 526 U.S. 1130 (1999)(as to a preliminary
injunction); see also Ballas v. Tedesco, 41 F. Supp.2d 531, 537
(D.N.J. 1999) (as to temporary restraining order).  A plaintiff
must establish that all four factors favor preliminary relief.
Opticians Ass'n of America v. Independent Opticians of America,
920 F.2d 187 (3d Cir. 1990).  The standards for a permanent
injunction are essentially the same as for a preliminary
injunction, except that the plaintiff must show actual success on
the merits, not a likelihood of success, to obtain a permanent
injunction.  See University of Texas v. Camenisch, 451 U.S. 390,
392 (1981).

     Plaintiff's request for a preliminary injunction pertains
only to the issue of being forced, as a pretrial detainee, to
share a cell with two other inmates for a period now exceeding
nine months where his mattress is on the floor only 13 inches
from the toilet.  Hargis may be able to show a likelihood of
success on the merits of his claim, as discussed in this Opinion
at Section III.B., supra, as well as irreparable harm from
exposure to urine and feces on a daily long term basis.  However,
it is not evident whether the relief sought, enjoining three-

inmate celling, would cause irreparable harm to defendants or be detrimental to the public interest overall.  Therefore, as set forth in the accompanying Order to this Opinion, the Court will direct defendants to show cause why plaintiff is not entitled to the preliminary injunctive relief sought.[9]

## V.  CONCLUSION

For the reasons set forth above, plaintiff's claim alleging denial of access to the courts will be dismissed in its entirety, as against all named defendants, and in particular, the ACJF law library staff, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Further, the Complaint will be dismissed with prejudice, in its entirety, as against the defendants, ACJF and the NJDOC, for failure to state a claim.  However, plaintiff's remaining claims alleging unconstitutional conditions of confinement will be allowed to proceed.  Finally, the Court will direct defendants to show cause why plaintiff's motion for a preliminary injunction should not be granted.  An appropriate order follows.


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

Dated:    **May 18, 2010**

---

[9] It is also conceivable that Plaintiff's claim for preliminary injunctive relief will have become moot by a change in his cell assignment and sleeping arrangements occurring after his complaint was filed.  If so, the responding Defendants shall so advise the Court.