IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARLON D. HARGIS, JR., | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 10-1006 (JBS/JS) |
| v. |  |
| ARAMARK CORRECTIONAL SERVICE, LLC, et al., | **OPINION** |
| Defendants. |  |

APPEARANCES:

Salvatore J. Siciliano, Esq.
SICILIANO & ASSOCIATES, LLC
16 South Haddon Avenue
P.O. Box 25
Haddonfield, NJ 08033
    Attorney for Plaintiff Marlon D. Hargis, Jr.

James T. Dugan, Esq.
Atlantic County Department of Law
1333 Atlantic Avenue
8th Floor
Atlantic City, NJ 08401
    Attorney for Defendants Dennis Levinson (improperly pleaded as
    Dennis Levison), Alisa Cooper (improperly pleaded as Mr.
    Cooper), James Curcio (improperly pleaded as Mr. Circio),
    Frank Finnerty (improperly pleaded as Mr. Finner), Joseph
    Kelly (improperly pleaded as Mr. Kelly), Lawton Nelson
    (improperly pleaded as Mr. Nelson), Thomas Russo (improperly
    pleaded as Mr. Russo), Susan Schilling (improperly pleaded as
    Mr. Schilling), Frank Sutton (improperly pleaded as Mr.
    Sutton), and Joseph Silipena (improperly pleaded as Mr.
    Filipina)

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

    Plaintiff Marlon D. Hargis, Jr., was a pre-trial detainee

who was admitted to the Atlantic County Justice Facility in 2009

with a gunshot wound.  He alleges that he was forced to live in overcrowded and unsanitary conditions due to a systematic policy of overcrowding pretrial detention facilities, including sleeping on the floor of his cell next to the toilet, and that he contracted a MRSA infection as a result of the actions of the defendants, in violation of his constitutional rights as an unconvicted inmate under the due process clause of the Fourteenth Amendment.  This opinion explores the constitutional standard required for housing pretrial detainees under the Fourteenth Amendment, in comparison to the standard protecting sentenced inmates from cruel and unusual punishment in their conditions of confinement under the Eighth Amendment.  The greater degree of constitutional protection given to pretrial detainees (who may be detained but not "punished" by their conditions of confinement) and sentenced prisoners (who may indeed be punished by their conditions of confinement so long as it is not "cruel and unusual") determines the standards to be applied in this case.

This matter is before the Court on a motion for summary judgment filed by Defendants Dennis Levison, Alisa Cooper (improperly pleaded as Mr. Cooper), James Curcio (improperly pleaded as Mr. Circio), Frank Finnerty (improperly pleaded as Mr. Finner), Joseph Kelly (improperly pleaded as Mr. Kelly), Lawton Nelson (improperly pleaded as Mr. Nelson), Thomas Russo (improperly pleaded as Mr. Russo), Susan Schilling (improperly

2

pleaded as Mr. Schilling), Frank Sutton (improperly pleaded as Mr. Sutton), and Joseph Silipena (improperly pleaded as Mr. Filipina)(hereinafter "Defendants" or "moving Defendants"). [Docket Item 65.]  The Plaintiff has filed opposition.  [Docket Item 66.]

For the reasons discussed herein, the Defendants' motion for summary judgment will be granted in part and denied in part.  The Court will also dismiss the remaining unnamed or unserved Defendants in this action for the reasons discussed below.

## II.   BACKGROUND

The instant action arises out of the conditions of confinement of Plaintiff Marlon D. Hargis, Jr., as a pre-trial detainee at Atlantic County Justice Facility ("ACJF").

Plaintiff was arrested on August 12, 2009 and at the time of his arrest was suffering from a gunshot wound to his right hip. There is no indication in the record that Plaintiff was arrested pursuant to an arrest warrant.  Rather, it appears from the record that Plaintiff was arrested at the scene of a gun fight. Plaintiff was taken to AtlantiCare Regional Medical Center where he was treated for the gunshot wound. (Pl.'s Ex. B.)  Shortly thereafter, Plaintiff was released into police custody and transported on the same day to ACJF with his gunshot wound bandaged.  (Pl.'s Ex. C; Def.'s Ex. A, Deposition of Marlon D.

Hargis taken May 12, 2011 ("Hargis Dep.") at 32:7.)  There is no evidence in the record indicating when Plaintiff received his probable cause hearing.

When Plaintiff arrived at ACJF, he was examined by medical staff who provided specific instructions to sleep on a lower level/lower bunk, not a boat, until "D/C'D by M.D."  (Pl.'s Ex. D.)  A boat is a plastic bed frame with a mattress, sheets and blanket that sits on the floor and is used as a third bunk in cells during periods of overcrowding.  (Def.'s Ex. B, Overcrowding Certification of Geraldine Cohen, Warden of ACJF, at ¶ 21.)[1]  Due to the cell's small dimensions, this third bunk is typically placed in close proximity to the toilet.  (Pl.'s Ex. E.)  During the period of Plaintiff's incarceration, the ACJF was required to house some pretrial detainees three men to a cell. This was necessary due to the high pretrial detainee population and the fact that state law does not permit ACJF to turn away properly committed individuals.  (Def.'s Statement of Facts ¶ 10.)  Warden Geraldine Cohen was aware of the policy of triple bunking, along with Lieutenant Steven Iuliucci.  (Def.'s Exs. B and C.)

---

[1] Cohen averred in her certification that a pillow is also provided with the boat.  Plaintiff, however, testified that he did not receive a pillow. (Hargis Dep. at 46:20-47:2.) Viewing the facts in the light most favorable to the Plaintiff, the Court will assume for purposes of this motion for summary judgment that the Plaintiff did not receive a pillow.

4

Plaintiff was housed in the medical wing of the jail from August 12, 2009 until August 16, 2009 due to his gunshot wound. On August 16, 2009, Plaintiff was released into the general population with no medical restrictions and assigned to a cell with two other men already confined.  (Def.'s Reply Ex. A; Hargis Dep. at 55:10-56:20.)  It was ACJF policy to assign the boat bunks to the newest inmates in the facility.  (Cohen Overcrowding Decl. at ¶ 22.)  As the newest man assigned to the cell, Plaintiff was ordered to sleep in a boat.[2]

During his time on the boat, Plaintiff slept in close proximity to the cell toilet, where "everything [urine and feces] splashed" on him and his mattress.  (Hargis Dep. at 56:19-57:1; 69:2.)

On September 4, 2009, after approximately three weeks of sleeping on a boat, Plaintiff developed two boils which were cultured and tested positive for MRSA.[3]  Prior to this, Plaintiff

---

[2] Plaintiff testified that when he first got to the jail, he was placed in a boat.  (Hargis Dep. at 47:3-5.)  Defendants dispute this and argue that when he first arrived at the jail, he stayed in the medical wing for four days and was assigned to a wall bunk.  (Pl.'s Reply Ex. A.)  Viewing the facts in the light most favorable to the Plaintiff, the court will assume for purposes of this motion for summary judgment that Plaintiff was assigned to sleep in a boat despite medical instructions against this placement.

[3] The Court takes judicial notice, pursuant to Fed. R. Evid. 201, that MRSA is an abbreviation for methicillin-resistant Staphylococcus aureus.  Staphylococcus aureus is a species of bacteria that causes serious suppurative infections and systemic disease, including impetigo bullosa, staphylococcal pneumonia and

5

never tested positive for MRSA nor experienced any MRSA related symptoms.  (Hargis Dep. at 55:21-25; Pl.'s Ex. F.)  Plaintiff testified that he slept in a boat for approximately ten to eleven months.  (Id. at 59:22-60:1.)  Mr. Hargis also testified that he often had to eat his meals in his cell on the boat close to the toilet because there was not enough space for all the inmates at ACJF to eat in the pod.  (Id. at 61:17-62:7.)

Pretrial detainees at ACJF are required to stay in their cells approximately eight (8) hours each day.  Inmate cells at ACJF are 77 square feet. (Defs.' Ex. C, Decl. of Lt. Steven Iuliucci ¶¶ 5, 11.)  The majority of a pretrial detainee's time at ACJF is spent either in his cell or in the available day space which is 792 square feet.  (Id. ¶¶ 6, 11.)  Recreation is permitted in the gymnasium, measuring 2,650 square feet and the outdoor area measuring 16,714 square feet.  (Id. ¶ 11.)  The record is silent on how much time is allotted per day for detainees to use the gymnasium and outdoor space.[4]

---

staphylococcal scalded skin syndrome.  It has developed a resistance to nearly all classes of antibiotics and can also produce toxins that cause food poisoning and toxic shock syndrome.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1184, 1765 (32d ed. 2012).

[4] Defendants state in their brief that Mr. Hargis was permitted one hour of recreation outside his living unit on a daily basis.  (Defs.' Br. at 11.)  Defendants cite to two certifications in the record.  These certifications, however, do not state that Mr. Hargis was permitted one hour of recreation outside his cell per day.  Therefore, the Court will give no weight to Defendants' unsubstantiated assertion in their brief as

Plaintiff filed the instant action pro se pursuant to 42 U.S.C. § 1983 alleging that the Defendants subjected him to unconstitutional confinement conditions and denied him access to the Courts. [Docket Items 1 and 2.]  The Court reviewed Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2) and dismissed Plaintiff's access to courts claim in its entirety. The Court permitted the Plaintiff to proceed with his conditions of confinement claim against John Doe Warden/Director, the Atlantic County Health and Sanitation Department, Aramark Correctional Service, LLC, the Atlantic County Chief Fire Inspectors, and the moving Defendants.  Defendant Dennis Levinson is sued in his individual capacity and his official capacity as Atlantic County Executive and the remaining moving Defendants are sued in their individual capacities and official capacities as Atlantic County Freeholders.  [Docket Item 2.]

Defendants Cooper, Curcio, Silipena, Finnerty, Kelly, Russo, Nelson, Sutton and Levinson filed an answer to the Amended Complaint.  [Docket Item 15.]  Defendant Atlantic City Chief Inspectors also answered the Amended Complaint.  [Docket Item 20.]  The summonses for Defendants Aramark Correctional Service, LLC, and Atlantic County Health and Sanitation Department were returned unexecuted on September 28, 2010.  [Docket Item 21.]  To date, these Defendants have not been served.  The time for

---

to the time allotted per day for recreation.

service of process expired 120 days after the Complaint was entered on the docket on May 19, 2010, which was September 17, 2010.

Plaintiff filed a motion to amend his complaint requesting to add Warden Sean Thomas, Warden Joseph Bondiskey and Warden Geraldine Cohen, among others, as defendants. [Docket Item 8.] Plaintiff's motion to amend was granted on December 28, 2010 and Plaintiff was ordered to file his Amended Complaint within 15 days of the entry of the Order. [Docket Item 30.] Plaintiff never filed an Amended Complaint and has not named and served fictitious Defendant John Doe Warden/Director.

Plaintiff then filed a motion to appoint pro bono counsel. This motion was granted on October 31, 2011. [Docket Item 49.] Sal Siciliano, Esq., was appointed to represent Plaintiff on March 22, 2012. [Docket Item 53.] The Scheduling Order was amended to allow Plaintiff's counsel to conduct any discovery that was appropriate. [Docket Items 56, 57, 58 and 61.]

Defendant Atlantic County Chief Inspectors was dismissed with prejudice by way of Consent Order on November 19, 2012. [Docket Item 63.] Discovery then concluded and the remaining Atlantic County Defendants filed the instant motion for summary judgment. [Docket Item 65.]

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

### B.  Claims Against Moving Defendants

Plaintiff's claims against the moving Defendants arise under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

9

Constitution and laws, shall be liable for redress . . .
42 U.S.C. § 1983 (1996).  The Plaintiff alleges he was subject to
unconstitutional conditions of confinement because he was forced
to sleep on a boat near the toilet while recovering from a
gunshot injury.  Plaintiff claims that housing three men in his
cell, which was designed to accommodate no more than two inmates,
when he had an open wound violated his constitutional rights and
caused him to contract MRSA.  Plaintiff also alleges that he was
frequently splashed with urine and feces due to his boat being
placed inches from the toilet.  Finally, Plaintiff claims that
the day space at ACJF is not able to accommodate the large inmate
population and consequently, Plaintiff was forced to eat his
meals by the toilet on his boat.

Plaintiff maintains that the ACJF fails to meet federal,
state and local requirements and this failure has created the
unsanitary, unhealthy, unsafe and substandard living conditions
discussed above.  Plaintiff claims he was subject to these
conditions while was a pretrial detainee before he was convicted
of any crime.[5]   The Plaintiff has sued the moving Defendants in
their individual and official capacities.  (Am. Compl. ¶ 53.)
The individual capacity and official capacity claims will be
analyzed separately below.

―――――――――――――――

[5] It is unclear from the record whether Plaintiff was
subject to these conditions prior to a determination of probable
cause.

At the outset, the Court notes that Plaintiff is raising a claim of unconstitutional conditions of confinement as a pretrial detainee, and that he is not alleging a medical claim of deliberate indifference to substantial medical needs.  He alleges instead that his contracting the MRSA infection was a consequence of his confinement in an unsanitary and overcrowded cell.  As discussed further below, this distinction is material because in the Third Circuit, the Bell v. Wolfish test governs a pretrial detainee's non-medical conditions of confinement claim, Hubbard v. Taylor, 538 F.3d 229, 231-32 (3d Cir. 2008)["Hubbard II"], while a denial of medical care claim by a pretrial detainee is governed by the Fourteenth Amendment's application of a standard of due process that is at least as protective for a pretrial detainee as the deliberate indifference standard of the Eighth Amendment is for a convicted inmate.  A.M. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 584 (3d Cir. 2004); see County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998) (deliberate indifference "must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial.")  Thus, this Court applies the due process standard of Bell v. Wolfish to this claim of overcrowding of a detainee.

### 1. Individual Capacity Claims against Moving Defendants

For a plaintiff to establish personal liability in a § 1983

action, he must be able to show that the official, acting under color of state law, caused the deprivation of a federal right. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (referencing Scheuer v. Rhodes, 416 U.S. 232, 237-238 (1974)).

Importantly, the Plaintiff must show that the moving Defendants had personal involvement in the alleged wrongdoing since liability under § 1983 cannot be predicated solely on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981). Section 1983 does not allow vicarious liability against supervisors for the actions of their employees. See, e.g., Iqbal, 556 U.S. at 676 (recognizing that vicarious liability is inapplicable to § 1983 suits); Monell, 436 U.S. at 692 (analyzing the statutory history and language of § 1983 and explaining why respondeat superior liability is not allowed).

In Sample v. Diecks, the Third Circuit Court of Appeals explained:

> [I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [plaintiff] identify specifically what it is that [defendant] failed to do that evidences his deliberate indifference.

Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

A defendant's personal involvement in causing a constitutional harm can be shown through "allegations of personal direction or of actual knowledge and acquiescence." Rode, 845

F.2d at 1207.  A Plaintiff must portray "specific conduct by
state officials which violates some constitutional right."
Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970).

The record currently before the Court contains no evidence
that the moving Defendants had any personal involvement in
causing the harm alleged to the Plaintiff.  The moving Defendants
are current and former Atlantic County Freeholders, with the
exception of Dennis Levinson who is Atlantic County's County
Executive.  The Board of Chosen Freeholders is a legislative body
and does not participate in executive or administrative
functions.  The County Executive is responsible for all
administrative and executive functions.  (N.J.S.A. § 40:41A-32;
Pl.'s Ex. I.)  The Plaintiff's own exhibit reiterates that the
Board of Chosen Freeholders "serves as the legislative body, much
like the U.S. Congress or the State Legislature. . . . [and]
performs all legislative actions on behalf of Atlantic County."
(Pl.'s Ex. I at 2.)

Here, the Plaintiff is not challenging any law passed by the
Freeholders and there is no allegation or proof that the
Freeholders adopted a legislative policy regarding the conditions
of confinement at issue in this case.  Instead, Plaintiff
testified that he brought this suit against the Freeholder
Defendants because "it's the freeholders' responsibility to make
sure that the jail is running; that people aren't being subjected

13

to the conditions that I was subjected to." (Hargis Dep. at 18:11-15.)  This clearly indicates a respondeat superior theory of liability which is not cognizable under § 1983.

Further, discovery is complete and the Plaintiff has adduced no proof of personal involvement, knowledge or acquiescence regarding the alleged constitutional violations by the Freeholder Defendants.  The most Plaintiff has produced are meeting minutes from a September 22, 2009 Freeholder Meeting which contained the following:

> Freeholder McDevitt talked about the jail tour.  He stated that everything was fixed and there was harmony with the FOP.  The Jail Committee received a good report that everything was working well and that there is a good personnel attitude.

> Freeholder Cooper thought that the jail was the best it has been in years.  The jail tour was cordial and calm. There was a good rapport.  They are on the right path.

> Freeholder Garret stated that the Committee's presence at the jail has made a difference.

(Pl.'s Ex. H at 5 ¶¶ 5-7.)  The Plaintiff also presented evidence that in 2012, three members of the Board of Freeholders formed an ad hoc Jail Committee.  None of these 2012 Freeholders are defendants in this case.

Without more, this evidence only demonstrates that the Board of Freeholders formed a Committee to review conditions at the jail and this Committee reported back that the jail was moving in a positive direction.  There is no evidence that this Committee discovered that jail officials were forcing inmates to sleep in

14

boats despite medical directives against these accommodations.
There is no evidence that this Committee knew that there was a
danger that communicable diseases were being spread to inmates
because of this sleeping arrangement.  There is also no evidence
that other inmates contracted MRSA at the jail during this period
of time, nor that these Defendants knew of such an outbreak or
that they were indifferent to it.

In order to survive summary judgment, a Plaintiff must show
"specific conduct by state officials which violates some
constitutional right."  <u>Gittlemacker v. Prasse</u>, 428 F.2d 1, 3 (3d
Cir. 1970).  The Plaintiff has shown nothing except that the
Freeholder Defendants met and began investigations into the
administration of the ACJF.  Plaintiff's theory of liability for
the Freeholder Defendants is predicated solely on a theory of
respondeat superior and is not cognizable under § 1983.  There is
no evidence in the record from which a rational factfinder could
conclude that the Freeholder Defendants had any personal
involvement in the alleged constitutional violations.  Therefore,
summary judgment will be granted as to the claims against the
Freeholder Defendants in their individual capacities.

The same analysis applies to Defendant Levinson as the
County Executive of Atlantic County.  While Defendant Levinson is
responsible for the day-to-day functions of the County, the
Plaintiff has produced no evidence that Levinson knew of the

15

alleged constitutional violations or had any personal involvement in these violations.  Without more, Plaintiff is merely seeking to hold Defendant Levinson liable on a supervisory theory of liability.  This is insufficient to sustain a claim against Levinson under § 1983 and no rational jury could find Levinson was personally involved in the alleged constitutional harms. Therefore, summary judgment will be granted as to Defendant Levinson and all claims against him in his personal capacity will be dismissed with prejudice.

       2.  Official Capacity Claims against Moving Defendants

Suits against municipal officers in their official capacity are essentially suits against the municipality.  Hafer v. Melo, 502 U.S. 21, 25 (1991)("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").  Consequently, a suit against Defendants in their official capacity is a suit against Atlantic County.

It is well established that in § 1983 cases, municipalities may not be held vicariously liable for the actions of their employees.  Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998)(citing Monell v. Department of Social Servs. of City of N.Y., 436 U.S. 658, 691-94 (1978)).  Rather, liability under § 1983 only attaches where the municipality had in place a custom or policy, which directly caused the constitutional deprivation.

Id.

Defendants argue summary judgment is appropriate because the Plaintiff has not established a violation of his Fourteenth Amendment rights.  The Court finds this unpersuasive and concludes that the Plaintiff has presented facts from which a rational jury could find that Plaintiff suffered a constitutional deprivation of due process as a result of Atlantic County's custom of overcrowding their prison facilities holding pretrial detainees.

Here, Plaintiff is a pretrial detainee, so the Eighth Amendment does not apply when analyzing his claims.  Rather, the due process clause of the Fourteenth Amendment applies when addressing the constitutionality of conditions of confinement imposed on pretrial detainees.  Bell v. Wolfish, 441 U.S. 520, 537 (1979).

A due process violation of the Fourteenth Amendment occurs when "the conditions of confinement complained of amounted to punishment prior to the adjudication of guilt." Simmons v. Taylor, No. 10-1192, 2012 WL 3863792, at *3 (D.N.J. September 5, 2012)(citing Bell v. Wolfish, 441 U.S. 520 (1979) and Acevedo v. CFG Health Sys. Staff, No. 10-5103, 2010 WL 4703774, at *4 (D.N.J. Nov. 12, 2010)).  The due process standard under the Fourteenth Amendment contains both objective and subjective components; "the objective component requires an inquiry into

17

whether the deprivation [was] sufficiently serious and the subjective component asks whether the officials act[ed] with a sufficiently culpable state of mind." Simmons, 2012 WL 3863792, at *3 (quoting Stevenson, 495 F.3d at 68) (internal quotation marks omitted).  An inference of mens rea is allowed "where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007).  Put another way, a "measure amounts to punishment when there is a showing of express intent to punish on the part of the detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." Simmons, 2012 WL 3863792, at *3 (quoting Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007)).  Whether a restriction is excessive requires a court to consider the totality of the conditions. Hubbard v. Taylor, 538 F.3d 229, 233 (3d Cir. 2008)("Hubbard II").

The standard to apply when evaluating conditions of confinement imposed on pretrial detainees is not clear and has been the subject of recent scholarly debate.  Catherine T. Struve, The Conditions of Pretrial Detention, 161 U. PA. L. REV. 1009 (2013).  The Supreme Court and the Third Circuit have

18

unequivocally held that the Fourteenth Amendment due process standard is at least as protective as the Eighth Amendment cruel and unusual punishment standard when analyzing conditions of confinement.  See Bell v. Wolfish, 441 U.S. at 545 ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"); Stevenson, 495 F.3d at 70 ("the protections due to sentenced inmates provide a floor for what pretrial detainees may expect").

However, the Supreme Court and the Third Circuit have yet to address when certain conditions violate the Fourteenth Amendment but not the Eighth Amendment.  In addition, the Supreme Court has offered little guidance on the standard to apply when a pretrial detainee is subject to poor conditions prior to a determination of probable cause.  There is some case law which would suggest the Fourth Amendment applies in this situation.  Atwater v. Lago Vista, 532 U.S. 318 (2001)(holding that the Fourth Amendment permits custodial arrest of an individual for minor offenses); Florence v. Bd. of Chosen Freeholders, 132 S. Ct. 1510 (2012)(analyzing a pretrial detainee's claims of an unlawful strip search under both the Fourth and Fourteenth Amendments).

Here, the record is unclear as to whether and when Plaintiff received a probable cause hearing and when Plaintiff was arraigned.  It appears that police arrested Hargis at the scene

19

of a shooting, and that he was not the subject of an indictment or other probable cause determination when he was first detained. Absent these facts, it is uncertain which standard applies to analyze Plaintiff's conditions of confinement claims.

The Court will apply the Third Circuit's analysis in Hubbard II, supra, on this motion for summary judgment which represents the minimum constitutional protections Plaintiff was entitled to as a pretrial detainee.  Hubbard v. Taylor, 538 F.3d 229, 233 (3d Cir. 2008).  However, the Court makes no finding as to what law will apply to the Plaintiff's claims at trial and further briefing by the parties may be needed.

The United States Court of Appeals for the Third Circuit recently addressed the practice of assigning three inmates to a two-person cell in the context of a Fourteenth Amendment claim brought by a pretrial detainee.  In Hubbard II, the Third Circuit held that requiring pretrial detainees to sleep on a mattress on the floor in a cell holding three inmates for three to seven months did not constitute punishment in violation of the Fourteenth Amendment.  538 F.3d at 234-35.  The court rejected a per se ban on the practice and instead considered it "as part of the 'totality of the circumstances within [the] institution.'" Id. at 235 (quoting Hubbard v. Taylor, 399 F.3d 150, 160 (3d Cir. 2005)("Hubbard I").  The court then concluded that although the plaintiffs "did spend a substantial amount of time on floor

20

mattresses," they had access to large day rooms and the record did not substantiate plaintiffs' claims that the use of floor mattresses caused disease or led to the splashing of human waste on the plaintiffs.  Id.  After noting the efforts made by the jail to improve conditions, the court found "that Plaintiffs were not subjected to genuine privations and hardship over an extended period of time for purposes of their due process claim."  Id.

The District of New Jersey, through Judge Renee Bumb, recently addressed the conditions of confinement at the ACJF from September 17, 2007 to May 28, 2009 with regard to pretrial detainees and triple-bunking.  In Duran v. Merline, No. 07-3589 (RMB/AMD), 2013 WL 504582 (D.N.J. February 8, 2013), the plaintiff was pretrial detainee at ACJF who alleged that:

> the ACJF was severely overcrowded, such that its 7 x 12 foot cells, which were designed for one inmate, housed three. The dayroom space available was so cramped that it did not provide space for recreation, dining, or other activities outside the cell. . . . [A]s a result of these conditions, [the plaintiff] was forced to sleep and eat his meals next to an open toilet for fifteen months, where he was frequently splashed with urine, feces, and other bodily fluids. These conditions led to the spread of disease and caused Plaintiff to suffer painful boils, rashes, and back pain.

Id. at *5.  These are the same conditions that are at issue in this case.  Indeed, Plaintiff Hargis was a pretrial detainee  at ACJF in August 2009, less than three months after the time period

addressed in <u>Duran</u>.[6]   In <u>Duran</u>, the Court addressed <u>Hubbard II</u>
and concluded that a genuine issue of material fact existed as to
whether the conditions of confinement at ACJF were
unconstitutional.   Judge Bumb reasoned:

> Given the totality of the circumstances, a question of
> fact exists as to whether these conditions exceeded the
> bounds of the Fourteenth Amendment.  These alleged
> conditions are significantly worse than those alleged by
> the <u>Hubbard II</u> plaintiffs.  First, while the cells in
> both cases are similarly sized, the day room space
> available to the <u>Hubbard II</u> plaintiffs was approximately
> ten times larger than the day room space available to a
> comparable number of ACJF inmates. Second, the <u>Hubbard II</u>
> plaintiffs were only relegated to floor mattresses for
> three to seven months, less than half the fifteen-month
> period that Plaintiff claims to have endured the
> conditions here.  Third, in <u>Hubbard II</u>, the record did
> not substantiate the plaintiffs' allegations that the use
> of floor mattresses resulted in "the splashing of human
> waste upon them." 538 F.3d at 235. Here, however,
> Plaintiff has corroborated his claim with letters,
> grievance forms, and his own affidavit. Plaintiff also
> proffered evidence concerning additional problems such as
> very limited recreational time (only once a week),
> extreme noise, violence, and the spread of disease.
>
> Further, while the <u>Hubbard II</u> majority found the
> plaintiffs' claims unsubstantiated, Third Circuit Judge
> Sloviter filed a concurring and dissenting opinion in
> which she credited such claims (that the plaintiffs slept
> on floor mattresses where they were regularly splashed
> with bodily fluids) and found them shocking to the
> conscience in violation of the Fourteenth Amendment.
> <u>Hubbard II</u>, 538 F.3d at 239 (Sloviter, J.,
> concurring/dissenting).  Here, as discussed above, the
> conditions allegedly suffered by Plaintiff were more
> egregious than those in <u>Hubbard II</u>, and Plaintiff
> supported such claims with evidence in the record.  Thus,
> it appears these facts create an issue for trial.  . . .

---

[6] In fact, Mr. Duran and Mr. Hargis were cellmates at one
point during Mr. Hargis's confinement and Hargis discussed his
legal action with Duran. (Hargis Dep. at 9:10-13:2; 20:15-21.)

. On this set of facts, the Court cannot conclude as a
matter of law that the conditions of Plaintiff's
confinement passed constitutional muster.

Id. at **5-6.  The same reasoning applies to the facts set forth

in this case.

Here, Mr. Hargis has also provided evidence of conditions

worse than those imposed on the pretrial detainees in Hubbard II.

He asserts that he was made to sleep on the boat next to a toilet

while recovering from a gunshot wound which was protected by only

a bandage.  He testified in his deposition that he was made to

sleep on a boat for approximately 10-11 months, which is longer

than the Hubbard II detainees.  He presented medical evidence

that within the first three weeks of sleeping on the boat, while

his gunshot wound was still fresh, he contracted MRSA and had two

painful boils on his body.  While Plaintiff has not presented

expert testimony relating to the cause of his contraction of

MRSA, the temporal proximity between his admission to AJCF and

the appearance of boils is quite suggestive.[7]  When coupled with

the fact that he was sleeping with an open gunshot wound on the

_____

   [7] Plaintiff is entitled to the benefit of reasonable
inferences that may be drawn in his favor from the facts in
evidence, as the party opposing summary judgment.  It can
reasonably be inferred that Plaintiff contracted MRSA while in
Defendants' custody due to the unsanitary, overcrowded cell
arrangements that he describes, due to Defendants' application of
the new-man-in-the-boat policy in disregard of medical orders.
Such an inference is not compelled but it is reasonably based
upon common knowledge even without the aid of expert witness
testimony.  Whether a jury is persuaded to agree remains to be
seen at trial.

floor next to an open toilet and assuming (as we must for purposes of this motion) that he was occasionally splashed with urine and feces of other cellmates, a rational jury could conclude that Mr. Hargis contracting MRSA was a foreseeable consequence these conditions of confinement.

Defendants' main argument in opposition is that Mr. Hargis was released into the general population without medical restrictions on August 16, 2009, so Plaintiff was not medically prohibited from sleeping in a boat.  Defendants' argument relies on several forms which were filled out when Plaintiff was first incarcerated at ACJF.  First, on August 12, 2009, when Plaintiff was initially housed in the medical wing, an "Identification of Special Needs" form stated that Plaintiff was to be given a "Lower Level/Lower Bunk **NO BOAT**" from 8/12/2009 until "D/c'd by M.D."  (Pl.'s Ex. D.)  However, just two days later, on August 14, 2009, a "Medical Screening" form was filled out which indicated that Plaintiff had "No current medical limitations." (Defs.' Reply Ex. A.)  This form also indicates that Plaintiff was *not* cleared for the general population because he would need crutches and an evaluation.[8]  Next, on August 15, 2009, a "Medical Classification Report" was issued which cleared Mr. Hargis for the general population.  (Id.)  Finally, on August 16,

---

[8] The rest of the notes on the Medical Screening form are illegible.

2009, a "Physicians' Orders" form was filled out and noted that Plaintiff was "clear gen pop." (Id.) Defendants argue these forms show that Mr. Hargis was not medically required to sleep in a bunk once he was cleared for the general population on August 16, 2009. There is a genuine dispute as to these facts.

Giving all favorable inferences to the non-moving party as is required on summary judgment, a reasonable jury could find that the prohibition on boats in the "Identification of Special Needs" form applied once the Plaintiff was released to the general population. First of all, boats were not used in the medical wing of ACJF and consequently, such a prohibition would make no rational sense while Plaintiff was housed in the medical wing if there was no possibility he would be forced to sleep in a boat. Logically, this prohibition would only apply when Plaintiff was released into the general population because then sleeping in a boat would be a possibility if there were no medical directives in place.

Second, the "Medical Screening" form, "Medical Classification Report" and "Physicians' Orders" form are different, distinct forms when compared with the "Identification of Special Needs" checklist. The "Special Needs" checklist has a specific, pre-written list and "NO BOAT" is one of the options. The "Special Needs" checklist particularly focuses on whether an inmate should sleep in a lower level/lower bunk. Neither of the

other three forms discuss bunk options or contain a pre-written "NO BOAT" selection.  Rather, the "Medical Screening" form lists such things as whether an inmate is diabetic, has a seizure disorder, or has current/past injuries.[9]  There is no mention of housing accommodations.  The "Medical Classification Report" contains a blank space for a medical professional to write down observations about an inmate and decide whether to refer an inmate to the mental health department.  This form has nothing to do with bunks or housing requirements.  The "Physicians' Orders" form contains a blank space to note an inmate's allergies and an inmate's current prescriptions and does not address housing options.

Therefore, giving all favorable inferences to the Plaintiff, a rational jury could conclude that the "Medical Screening" form, the "Medical Classification Report" and the "Physicians' Orders" forms would not negate the NO BOAT prohibition contained in the "Identification of Special Needs" form.  A reasonable jury could conclude that this form is distinct and separate from the other forms at issue.  Further, when considered in conjunction with Plaintiff's open gunshot wound on his right hip, a rational jury could find that Plaintiff's need to sleep on a bunk, not a boat beneath the open toilet, was obvious and in line with Plaintiff's

---

[9] It is unexplained how Hargis, having a fresh gunshot wound, could be said to have no current injury.

medical condition.  Therefore, genuine issues of material fact
exist which prevent summary judgment as to the Defendants'
official capacity claims.

In addition, while ACJF had a day space available, this area
is significantly smaller than the area at issue in Hubbard II, as
explained in Duran.  Plaintiff also testified that he had to eat
his meals by the toilet because there was not enough room in the
day space for all the detainees.  Though an outdoor area and
gymnasium were available for recreation, the record is silent on
how much time per day pretrial detainees are given to use these
spaces.  While Plaintiff was recovering from a gunshot wound, it
is unlikely he would have been physically able to take advantage
of these spaces even if given the opportunity.  Indeed, Lt.
Iuliucci declared that the balance of an inmate's time is spent
either in his cell or in the overcrowded day space.

Though ACJF has a legitimate interest in providing housing
to the high pretrial detainee population, a rational factfinder
could conclude that the policy of triple-bunking in Mr. Hargis's
situation in the aftermath of an open gunshot wound was not
rationally related to this purpose and excessive.  Confinement of
a detainee in an unsanitary and dangerous environment for a very
extended period of time would seem to cross the line between
temporarily crowded and suboptimal detention, on the one hand,
and unsanctioned punishment on the other.  The County's reliance

27

on <u>Nickles v. Taylor</u>, Civ. Nos. 09-313, 09-557, 09-679, 09-952,
2010 WL 1949447 (D.N.J. May 14, 2010), is misplaced as <u>Nickles</u> is
distinguishable from the instant action.  <u>Nickles</u> dealt with a
prisoner's unsubstantiated allegations of unconstitutional
conditions.  Here, the Plaintiff has presented sufficient
evidence to support his claims.  Viewing the facts in the light
most favorable to the Plaintiff, a rational jury could find that
the Plaintiff was deprived of his Fourteenth Amendment rights.
<u>Nickles</u> also applied the Eighth Amendment.  Here, Mr. Hargis is a
pretrial detainee and protected by the Fourteenth Amendment.

In addition, a rational jury could conclude that Plaintiff's
constitutional deprivation was the result of municipal custom or
usage.  As Judge Bumb explained in <u>Duran</u>:

> [T]he County has a long history of operating the ACJF in
> an overcrowded and unsanitary manner. The parties do not
> dispute that [the Warden] was well aware of the
> overcrowded conditions; in fact, Plaintiff proffered a
> letter from him in which he acknowledged that the ACJF
> has been overcrowded "for my 24 years here."  Merline
> Letter, July 2, 2007, Pl.'s (unnumbered) exhibit. The
> Third Circuit has recognized that such long-standing
> conditions of confinement may reflect the existence of a
> custom for § 1983 purposes. <u>Anela v. City of Wildwood</u>,
> 790 F.2d 1063, 1069 (3d Cir. 1986) (holding that jail's
> long-standing conditions of confinement constituted a
> city "custom or usage" for <u>Monell</u> purposes); <u>Bowers v.
> City of Phila.</u>, Civ. No. 06-3229, 2008 WL 5210256, *6
> (E.D.Pa. Dec. 12, 2008) (same).  In light of the 24 years
> of overcrowding at the ACJF, a reasonable fact-finder
> could conclude that these conditions amounted to a
> custom, which caused the harm alleged by Plaintiff.
> Further, Plaintiff has specifically identified the
> widespread custom of "triple-celling" inmates, which he
> claims has led to unsanitary conditions, such as the
> splashing of urine and feces on him. . . .  The County

> Defendants readily admit that they triple-cell inmates
> during periods of overcrowding.

Duran, 2013 WL 504582, at *7.  The Court finds these facts and

legal principles equally applicable in this case.  Indeed,

Plaintiff submits the same exhibit from Warden Merline wherein

the Warden acknowledges that the ACJF has been overcrowded for

twenty-four years.  (Pl.'s Ex. G.)  A reasonable fact finder

could find that this is sufficient to show a municipal custom of

indifference to providing an adequate facility for pretrial

detainees.  Where the custom causes physical injury to a pretrial

detainee, the jury must determine whether the defendant was

indifferent to the prospect of harm to the detainee arising from

overcrowding.  Therefore, a rational jury could conclude that

Plaintiff's constitutional harms were caused by the County's

custom of overcrowding its jail, exposing Plaintiff to unsanitary

conditions, in disregard of his serious medical condition.

Accordingly, Defendants' motion for summary judgment will be

denied as to the claims asserted against them in their official

capacity.

### D.   Defendants Aramark and Atlantic County Health and Sanitation Department

Two additional defendants in this action are Aramark

Correctional Service, LLC and Atlantic County Health and

Sanitation Department.  Neither of these Defendants has been

served.  Their summonses were returned unexecuted on September

28, 2010.  [Docket Item 21.]

Rule 4(m) states that, if a defendant is not served within 120 days after the complaint is filed, courts "must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

The Plaintiff has not sought an extension of time to serve these Defendants and has not provided any reason for failing to serve them.  The Plaintiff proceeded to litigate this case and complete discovery without ever serving these Defendants.  The court finds no reason, two and a half years after the summonses were returned unexecuted, to permit Plaintiff to serve these Defendants at this late juncture.  Therefore, the Court will dismiss Defendants Aramark, LLC and Atlantic County Health and Sanitation Department without prejudice.  If the Plaintiff contests this dismissal, the Plaintiff must show good cause why he should be permitted to serve these Defendants out of time within fourteen (14) days of this order.[10]  If the Plaintiff does not show cause within fourteen (14) days, then the dismissal of

---

[10] The "primary focus" of the good cause analysis "is on the plaintiff's reasons for not complying with the time limit in the first place." MCI Telecomms. Corp. V. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995).  To show good cause, a plaintiff must show "'(1) good faith on the part of the party seeking an enlargement and (2) some reasonable basis for non-compliance within the time specified in the rules.'" Id. (quoting Petrucelli v. Bohringer, 46 F.3d 1298, 1312 (3d Cir. 1995)(Becker, J., concurring in part and dissenting in part)). Moreover, a plaintiff seeking to enlarge time to serve an absent defendant after expiration of discovery and indeed after most claims against viable defendants have been adjudicated bears a heavy burden, since the case would essentially begin anew as to the unserved defendants.

these Defendants will be with prejudice.

**E. John Doe Warden/Director**

The last defendant listed is fictitious John Doe
Warden/Director.  Discovery is complete and Plaintiff has failed
to file an amended complaint naming fictitious Defendant John Doe
Warden/Director.  In his brief, Plaintiff argues that Warden
Geraldine Cohen is liable under § 1983.  The Plaintiff, however,
has never named Geraldine Cohen as a Defendant in this case and
she has never been served with a complaint or been made to
answer.

The Plaintiff was given an opportunity to name John Doe
Warden/Director when his motion to amend was granted on December
28, 2010.  Plaintiff was ordered to file an amended complaint
within 15 days of the order and the purpose of this amended
complaint was to name the fictitious defendant, John Doe
Warden/Director.  Plaintiff, however, failed to file an amended
complaint and declined to name John Doe/Warden and consequently,
no one was ever served.

A court may, pursuant to Fed. R. Civ. P. 21, drop a party on
its own motion "on just terms."  Fed. R. Civ. P. 21.  Courts in
the Third Circuit have used this rule to dismiss fictitious
parties from an action when necessary.  Blakeslee v. Clinton
County, 336 Fed. Appx. 248, 250-51 (3d Cir. 2009); Adams v. City
of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006).  "[I]f after a
reasonable period of discovery a plaintiff has not identified the

31

fictitious defendant, the court may dismiss the fictitious
defendant." Martin v. Comunale, No. 03-CV-06793, 2006 U.S. Dist.
LEXIS 1692, 2006 WL 208645 (E.D. Pa. January 18, 2006)(citing
Agresta v. City of Philadelphia, 694 F. Supp. 117 (E.D. Pa.
1988)).

 Factual discovery is complete and the Plaintiff has not
moved to name this fictitious party.  When the Plaintiff was
given an opportunity amend his complaint to name this fictitious
defendant two years ago, Plaintiff chose not do so and never
filed an amended pleading.  Plaintiff cannot now be heard to
argue two and a half years later that Geraldine Cohen is liable
under Section 1983 in order to delay entering summary judgment in
this case.  Plaintiff offers no explanation for his dilatory and
neglectful conduct in failing to name John Doe/Warden.  This
litigation has been pending for more than three years and the
Plaintiff has made no effort to file an amended complaint,
despite being given an opportunity to do so.

 Further, the evidence in the record does not suggest that
Geraldine Cohen would be liable in her personal capacity even if
named as a defendant.  The Plaintiff has put forth no evidence
that Cohen knew Plaintiff was assigned to a boat when the medical
staff at the prison specifically directed he be assigned to a
lower bunk.  Plaintiff admits in his deposition testimony that he
never wrote a grievance or filed an inmate request form saying he
wanted to be on a bunk.  (Hargis Dep. at 47:22-25.)  There is

also no evidence that Plaintiff ever complained to Cohen about the location of his bed in the cell and how its proximity to the toilet caused him to be splashed with urine and feces.  In fact, Hargis testified that he never filed an inmate request form complaining that his boat was too close to the toilet. (Hargis Dep. at 61:10-13.)

Without this evidence, Plaintiff has failed to establish that Cohen knew anything beyond that pretrial detainees were sometimes required to sleep three to cell when the cell was made for two inmates.  Cohen averred in her declaration that to her knowledge, no inmate uses a boat for more than five months. (Cohen Overcrowding Decl. ¶ 23.)  This by itself is not unconstitutional and is strong evidence that Cohen would be entitled to qualified immunity.  See Hubbard v. Taylor, 538 F.3d 229 (3d Cir. 2008)(holding that requiring pretrial detainees to sleep on a mattress on the floor in a cell holding three inmates for three to seven months did not constitute punishment in violation of the Fourteen Amendment); see also Duran, 2013 WL 504582, at **7-8 (finding a warden was entitled to qualified immunity because it is not well established what degree of prison overcrowding constitutes punishment under the Fourteenth Amendment).

Therefore, pursuant to Fed. R. Civ. P. 21, the Court will dismiss John Doe Warden/Director as a Defendant.  The Plaintiff has failed to name this fictitious defendant and discovery is now

complete.  The record before the Court does not suggest Geraldine
Cohen, as Warden of ACJF, would be liable in her personal
capacity in any event.  Accordingly, the Court finds it just and
appropriate to dismiss John Doe Warden/Director as a party at
this time.


**IV.  CONCLUSION**

For the reasons discussed above, Defendants' motion for
summary judgment will be granted in part and denied in part.  The
Plaintiff failed to present any evidence from which a rational
jury could conclude that the moving Defendants had a personal
involvement in the alleged constitutional violations.  Therefore,
summary judgment will be granted as to the claims against the
moving Defendants in their individual capacity.

However, Plaintiff has produced sufficient evidence from
which a rational jury could find that he was deprived of his
constitutional rights under the Fourteenth Amendment and this
deprivation was the result of the County's custom of prison
overcrowding as applied to a detainee with an open gunshot wound,
and that it was foreseeable that personal harm of this type would
be caused by such policy.  Therefore, summary judgment will be
denied as to the claims against the moving Defendants in their
official capacities.

In addition, Defendants Aramark Correctional Service, LLC,

34

and Atlantic County Health and Sanitation Department will be dismissed without prejudice for failure to serve pursuant to Fed. R. Civ. P. 4(m).  The Plaintiff will have fourteen (14) days to show good cause why he failed to serve these Defendants within the specified time limit.  If the Plaintiff fails to show cause, these Defendants will be dismissed with prejudice.

Finally, fictitious Defendant John Doe Warden/Director will be dismissed pursuant to Fed. R. Civ. P. 21 as the Plaintiff has failed to amend his complaint to name this fictitious Defendant after discovery has been completed.

The accompanying Order will be entered.

**July 10, 2013**                          **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             Chief U.S. District Judge

35