IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARLON D. HARGIS, JR., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 10-1006 (JBS/JS) |
| ATLANTIC COUNTY JUSTICE FACILITY, ET AL., | **OPINION** |
| Defendants. | |

APPEARANCES:

Salvatore J. Siciliano, Esq.
SICILIANO & ASSOCIATES, LLC
16 South Haddon Avenue
P.O. Box 25
Haddonfield, NJ 08033
    Attorney for Plaintiff Marlon D. Hargis, Jr.

James T. Dugan, Esq.
ATLANTIC COUNTY DEPARTMENT OF LAW
1333 Atlantic Avenue
8th Floor
Atlantic City, NJ 08401
    Attorney for Defendants Dennis Levinson (improperly pleaded
    as Dennis Levison) and the Atlantic County Board of Chosen
    Freeholders

**SIMANDLE, Chief Judge:**

I.    **INTRODUCTION**

Plaintiff Marlon D. Hargis, Jr., was a pretrial detainee who was admitted to the Atlantic County Justice Facility ("ACJF") in 2009 with a gunshot wound. He alleges that his constitutional rights under the Fourteenth Amendment were

violated as the result of being forced to live in overcrowded and unsanitary conditions at ACJF, including sleeping on the floor of his cell next to the toilet and being diagnosed with a MRSA infection.

This matter comes before the Court on Defendants Dennis Levinson and the Atlantic County Board of Chosen Freeholders' second motion for summary judgment [Docket Item 94], which the Court allowed following decision on certain pretrial motions filed by Defendants. The Court previously issued an opinion and order on Defendants first motion for summary judgment, which the Court now vacates in part.

For the reasons discussed below, the Court will grant in part and defer in part Defendants' motion for summary judgment.

## II. BACKGROUND

### A. Factual Background

The facts of this case are recounted in detail in the Court's July 10, 2013 opinion addressing Defendants' first motion for summary judgment. See Hargis v. Aramark Corr. Serv., LLC, Civ. 10-1006 (JBS/JS), 2013 WL 3465189 (D.N.J. July 10, 2013). The following facts are those necessary to provide context for the instant motion.

Plaintiff was arrested on August 12, 2009 and at the time of his arrest was suffering from a gunshot wound to his right hip. Plaintiff was taken to AtlantiCare Regional Medical Center

2

where he was treated for the gunshot wound. Shortly thereafter, Plaintiff was released into police custody and transported on the same day to ACJF with his gunshot wound bandaged.

When Plaintiff arrived at ACJF, he was examined by medical staff who provided specific instructions to sleep on a lower level/lower bunk, not a "boat." A boat is a plastic bed frame with a mattress, sheets and blanket that sits on the floor and is used as a third bunk in cells during periods of overcrowding. Warden Geraldine Cohen and Lieutenant Steven Iuliucci were aware of the policy of triple-celling.

Plaintiff was housed in the medical wing of the jail from August 12, 2009 until August 16, 2009 due to his gunshot wound. On August 16, 2009, Plaintiff was released into the general population with no medical restrictions and assigned to a cell with two other men already confined. As the newest man assigned to the cell, Plaintiff was ordered to sleep in a boat in close proximity to the cell toilet.

On September 4, 2009, after approximately three weeks of sleeping on a boat, Plaintiff developed two boils which were cultured and tested positive for methicillin-resistant Staphylococcus aureus ("MRSA").[1] Prior to this, Plaintiff never

---

[1] The Court has taken judicial notice, pursuant to Fed. R. Ev. 201, that MRSA is an abbreviation for methicillin-resistant Staphylococcus aureus. Staphylococcus aureus is a species of bacteria that causes serious suppurative infections and systemic

3

tested positive for MRSA nor experienced any MRSA related symptoms. Plaintiff testified that he slept in a boat for approximately ten to eleven months.

In light of Defendants' second motion for summary judgment, the parties have supplemented the record with the following regarding Atlantic County's form of government. Atlantic County adopted the "County Executive Plan" form of government pursuant to the Atlantic County Charter in 1974. (Pl. Ex. H [Docket Item 95-3.]) Under this form of government, all administrative or executive functions are to be exercised by an elected county executive and all legislative and investigative functions are to be exercised by a board of elected freeholders. (Id.)

The Atlantic County Charter provides that the county executive shall prepare and submit to the board an annual operating budget and a capital budget and establish procedures "to be followed by all county departments, offices and agencies in connection therewith." (Id.) The County executive is obligated to "[s]upervise the care and custody of all county property, institutions and agencies," as well as to "[r]eview . . . trends of county services . . . and programs of all boards,

---

disease, including impetigo bullosa, staphylococcal pneumonia and staphylococcal scalded skin syndrome. It has developed a resistance to nearly all classes of antibiotics and can also produce toxins that cause food poisoning and toxic shock syndrome. Dorland's Illustrated Medical Dictionary 1184, 1765 (32d ed. 2012).

commissions, agencies and other county bodies." (Id.) Further, the county executive "[s]hall supervise, direct and control all county administrative departments." (Id.)

Under the Atlantic County Charter, the board "[s]hall pass . . . whatever ordinances and resolutions it deems necessary and proper for the good governance of the county." (Id.) The county executive reports to the board and the board oversees the county executive in the exercise of his or her executive powers. For example, the board must approve the annual operating and capital budgets prepared by the county executive. (Id.)

Dennis Levinson is Atlantic County's County Executive. Levinson certifies that he does not and has never established policies and procedures for the operation of ACJF, and it is his understanding that ACJF establishes its policies and procedures with the guidance of the Attorney General Guidelines, New Jersey Administrative Code 10A, and directives from the prosecutors' office. (Certification of Dennis Levinson [Docket Item 94-2] ¶¶ 13, 15.) Levinson is unaware of any constitutional violations at ACJF and he has never met or encountered Plaintiff. (Id. ¶¶ 18-19.)

## B. Procedural Background

Plaintiff filed the instant action pro se pursuant to 42 U.S.C. § 1983 alleging that the Defendants subjected him to unconstitutional confinement conditions and denied him access to

5

the Courts. [Docket Items 1 & 2.] The Court dismissed Plaintiff's access to courts claim, but permitted Plaintiff to proceed with his conditions of confinement claim against John Doe Warden/Director, the Atlantic County Health and Sanitation Department, Aramark Correctional Service, LLC, the Atlantic County Chief Fire Inspectors, County Executive Dennis Levinson, and current and former members of the Atlantic County Board of Chosen Freeholders.[2] [Docket Item 5.]

Defendant Atlantic County Chief Inspectors was dismissed with prejudice by way of Consent Order on November 19, 2012. [Docket Item 63.] On March 1, 2013, Defendants Dennis Levinson and the Atlantic County Board of Chosen Freeholders filed a motion for summary judgment. [Docket Item 65.] By Order entered July 10, 2013, the Court granted summary judgment to Defendants as to claims against Defendants in their individual capacity. However, the Court denied summary judgment as to claims against

---

[2] Plaintiff's Amended Complaint asserts claims against Dennis Levinson (improperly pleaded as Dennis Levison), Alisa Cooper (improperly pleaded as Mr. Cooper), James Curcio (improperly pleaded as Mr. Circio), Frank Finnerty (improperly pleaded as Mr. Finner), Joseph Kelly (improperly pleaded as Mr. Kelly), Lawton Nelson (improperly pleaded as Mr. Nelson), Thomas Russo (improperly pleaded as Mr. Russo), Susan Schilling (improperly pleaded as Mr. Schilling), Frank Sutton (improperly pleaded as Mr. Sutton), and Joseph Silipena (improperly pleaded as Mr. Filipina). All but Dennis Levinson are current or former members of the Atlantic County Board of Chosen Freeholders. Dennis Levinson is County Executive for Atlantic County. On March 7, 2014, the Court ordered that the Atlantic County Board of Chosen Freeholders be substituted on the docket for the individually named freeholders. [Docket Item 93.]

Defendants in their official capacities. Additionally, the Court dismissed without prejudice claims against Defendants Aramark Correctional Service, LLC and Atlantic County Health and Sanitation Department for failure to serve pursuant to Fed. R. Civ. P. 4(m). The Court granted Plaintiff fourteen days to show good cause why he failed to serve these defendants within the specified time limit.[3] Finally, the Court dismissed Plaintiff's claims against fictitious Defendant John Doe Warden/Director pursuant to Fed. R. Civ. P. 21 because Plaintiff failed to amend his complaint to name this fictitious defendant after discovery was complete.

Subsequently, a jury trial was to commence on March 3, 2014. The Court heard oral argument on three motions in limine filed by Defendants on March 4, 2014. The Court granted Defendants' first motion in limine [Docket Item 84] and precluded Plaintiff from testifying regarding accepted correctional practices requiring specialized knowledge. The Court granted Defendants' second motion in limine [Docket Item 85] and precluded Plaintiff from testifying as to medical causation regarding his MRSA diagnosis. The Court denied Defendants' third motion in limine [Docket Item 86] and permitted Plaintiff to testify regarding ACJF's practice of

---

[3] The Court noted that if Plaintiff failed to show cause, these defendants will be dismissed with prejudice.

triple-celling pretrial detainees. Additionally, the Court granted Defendants leave to file a renewed motion for summary judgment, which the Court now addresses.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).

The denial of a motion for summary judgment, such as the July 10, 2013 Order in this case, is an interlocutory order. Bines v. Kulaylat, 215 F.3d 381, 384 (3d Cir. 2000) ("As a general rule, we have no jurisdiction under 28 U.S.C. § 1291 to review interlocutory orders such as a denial of summary judgment."). "A district court retaining jurisdiction over a case 'possesses inherent power over interlocutory orders, and

8

can reconsider them when it is consonant with justice to do so.'" Mainguth v. Packard, Civ. 05-0256, 2006 WL 1410737, at *1 (M.D. Pa. May 23, 2006) (quoting United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973)).

## IV. DISCUSSION

Defendants assert two arguments in support of their second motion for summary judgment. First, Defendants argue that Defendants Dennis Levinson and the Atlantic County Board of Chosen Freeholders are not policymakers with regard to the alleged constitutional violations asserted by Plaintiff. Second, Defendants argue that Plaintiff has failed to present sufficient evidence that his conditions of confinement constituted punishment under the Fourteenth Amendment.

Plaintiff responds that the customs which resulted in the allegedly unconstitutional conditions of confinement were promulgated by Defendants in their official capacities and Defendants had the requisite culpability with regard to the harms these customs could inflict on inmates at ACJF. Plaintiff also argues that the totality of the circumstances at ACJF amounted to excessive punishment in violation of the Fourteenth Amendment.

### A. Responsibility for conditions at Atlantic County Justice Facility

The Court first addresses whether the Atlantic County Board of Chosen Freeholders ("the Board") and Dennis Levinson in his official capacity as county executive are policymakers who may be liable for the allegedly unconstitutional conditions of confinement at ACJF. The Court concludes that the Board may not be liable because there is no evidence that the Board was responsible for establishing policy at ACJF and there is no evidence that the Board was deliberately indifferent to the conditions at ACJF. However, the Court construes Plaintiff's claims against Levinson in his official capacity as claims against Atlantic County and finds sufficient evidence of a county policy or custom to establish municipal liability.

It is well-established that municipal liability under § 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978)). As a consequence, a municipality is liable under § 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694; Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion) ("[M]unicipal

10

liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

The Third Circuit has neatly defined "policy" and "custom" for the purposes of municipal liability:

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)].

Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003). Both must be tied to the responsible municipality.

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that

the policymaker can reasonably be said to have been
deliberately indifferent to the need.

Id. (internal punctuation and citations omitted). Whether a
policy or a custom, "The plaintiff must also demonstrate that,
through its deliberate conduct, the municipality was the 'moving
force' behind the injury alleged." Bd. of the County Comm'rs,
520 U.S. at 404. Thus, for a plaintiff to sufficiently allege
municipal liability under § 1983, they must present facts to
support a finding that a specific policy or custom caused the
alleged harm.

    In the present case, claims against the Atlantic County
Board of Chosen Freeholders shall be dismissed because Plaintiff
has presented no evidence that the Board was responsible for
establishing policies with respect to the conditions at ACJF,
nor any evidence connecting the Board to the alleged
constitutional violations at ACJF. Plaintiff originally asserted
claims against current and former board members in their
official capacities. Recognizing that claims against individual
defendants in their official capacities are equivalent to claims
against the governmental entity itself, the Court ordered that
the Atlantic County Board of Chosen Freeholders be substituted
for the individually named defendants. See Kentucky v. Graham,
473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . .
generally represent only another way of pleading an action

12

against an entity of which an officer is an agent.") (quoting Monell, 436 U.S. at 690); Bass v. Attardi, 868 F.2d 45, 51 (3d Cir. 1989) ("Thus . . . the suit naming the members of the Planning Board in their official capacities in effect makes the Planning Board a defendant.").

The Court previously concluded that "[t]he Board of Chosen Freeholders is a legislative body and does not participate in executive or administrative functions. The County Executive is responsible for all administrative and executive functions . . . . Plaintiff is not challenging any law passed by the Board and there is no allegation or proof that the Board adopted a policy or custom regarding the conditions of confinement at issue in this case." Hargis, 2013 WL 3465189, at *5. Further, the record contains no evidence that the Board knew of or acquiesced in the alleged constitutional violations at ACJF, nor any evidence that the Board was deliberately indifferent to same.

Courts in the District of New Jersey have consistently dismissed claims against boards of chosen freeholders where, as here, plaintiff has presented no evidence of any personal knowledge, acquiescence, or policymaking by the board. See Seaforth v. Burlington Cnty. Jail, Civ. 09-3174 (RMB), 2010 WL 398452, at *3 (D.N.J. Jan. 28, 2010) ("Because Plaintiff's allegations do not show that the execution of a policy or custom adopted by the Burlington County Board of Chosen Freeholders

13

inflicted the constitutional injury, the Complaint fails to state a claim against the county or board of freeholders and will be dismissed."); Junne v. Atl. City Med. Ctr., Civ. 07-5262 (RMB), 2008 WL 343557, at *9-10 (D.N.J. Feb. 4, 2008) (dismissing claims against county and its freeholders where "Plaintiff merely assert[ed] a bald claim that these Defendants have made some policies that resulted in a lack of medical treatment" at ACJF); Jiles v. Burlington Cnty. Jail, Civ. 09-3910 (JBS), 2009 WL 2905441, at *6-7 (D.N.J. Sept. 8, 2009) (dismissing claims against board of freeholders where Plaintiff alleged "no facts suggesting that the denial of medical care . . . was the result of a policy or custom of the [board]" and alleged "merely that the [board] exercise[d] 'control' over the [jail]."); McNeil v. Harvey, Civ. 04-5934 (RBK), 2005 WL 2237769, at *5 n.4 (D.N.J. Sept. 12, 2005) (dismissing claims against county and its freeholders where Plaintiff "failed to set forth any facts permitting the inference that the complained-of conditions at the [jail] exist[ed] pursuant to an official custom or policy.").

Importantly, the present action is distinct from cases where a board of chosen freeholders has taken custody of the jails pursuant to N.J.S.A. § 30:8-19. See Ryan v. Burlington Cnty., 674 F. Supp. 464, 467 (D.N.J. 1987), aff'd and remanded sub nom., Ryan v. Burlington Cnty., N.J., 860 F.2d 1199 (3d Cir.

1988) (noting that "[r]esponsibility for county jails is generally under the control of the county sheriff, N.J.S.A. 30:8-17, 18"). See also Ryan v. Burlington Cnty., N.J., 889 F.2d 1286, 1291 (3d Cir. 1989) (finding individual members of the board of chosen freeholders were not entitled to absolute immunity because the board had assumed control over the jail from the sheriff's office as part of an earlier settlement agreement regarding overcrowded conditions and "the implementation of the daily decisions involving the administration of the Jail was not legislative, but managerial"); Friedland v. Hayman, Civ. 06-2583 (RMB), 2008 WL 3887614, at *2 (D.N.J. Aug. 19, 2008) (granting summary judgment to freeholders as to plaintiff's failure to protect claim where there was no evidence or allegation that the Monmouth County Board of Chosen Freeholders had taken custody of the jails).

Here, unlike Ryan, there has been no settlement agreement and there is no evidence or allegation that the Atlantic County Board of Chosen Freeholders assumed an administrative role in overseeing the day-to-day operation of ACJF. There is no evidence of personal knowledge or acquiescence by any member of the Board regarding the allegedly unconstitutional conditions at ACJF. Further, there is no evidence that the conditions at ACJF were the result of a policy or custom enacted by the Board or that the Board was deliberately indifferent to the conditions at

15

ACJF. Therefore, the Atlantic County Board of Chosen Freeholders cannot be liable under a theory of municipal liability.

The same cannot be said, however, for Plaintiff's claims against Dennis Levinson in his official capacity. As noted in the Court's previous decision, the Court construes claims against Levinson in his official capacity as claims against Atlantic County. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quoting Monell, 436 U.S. at 690, n.55); Hill v. Borough of Kutztown, 455 F.3d 225, 233 n.9 (3d Cir. 2006) (stating that claims under 1983 against former mayor in his official capacity "are, effectively, identical to the § 1983 claims against the Borough"); Johnson v. Gannon, Civ. 09-0551, 2010 WL 1658616, at *3 (M.D. Tenn. Apr. 23, 2010) (construing claims under section 1983 against county executive in official capacity as claims against the county).

As noted previously, it is well established that in section 1983 cases, government entities may not be held vicariously liable for the actions of their employees. Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998) (citing Monell, 436 U.S. at 691-94). Rather, liability under section 1983 only attaches where the municipality had in place a custom or policy, which directly caused the constitutional deprivation. Id.

16

The Court declines to revisit its previous finding that "a rational jury could conclude that Plaintiff's constitutional deprivation was the result of municipal custom or usage." Hargis, 2013 WL 3465189, at *12. Because the Court construes Plaintiff's claims as against the County, there is no need to show that Levinson in his role as county executive was the final decision-maker with regard to ACJF.[4] It is sufficient that the warden of ACJF who Defendants concede is responsible for the day-to-day operations of the ACJF was aware of ACJF's policy or

---

[4] The present case is distinguishable from Bush v. Rendell, 2011 U.S. Dist. LEXIS 153528 (M.D. Pa. Dec. 19, 2011) cited by Defendants, where the magistrate judge recommended dismissing claims against the county defendants in their official capacities because plaintiffs' amended complaint pointed to a state department of corrections policy or custom, and not a policy or custom of the county. Bush, 2011 U.S. Dist. LEXIS 153528, at *14-15. In Bush, unlike here, "the gravamen of plaintiffs' allegations" against the commonwealth and county defendants concerned their roles in effectuating plaintiffs' transfer from a state correctional institution to a county jail. Id. at *3. Further, the present action is not the type of case like Minatee v. City of Philadelphia, 2011 U.S. Dist. LEXIS 103527 (E.D. Pa. Sept. 9, 2011) where there was no evidence of a policy or custom enacted by policymakers with final decision-making authority. It is undisputed here that the warden was aware of the overcrowded conditions at ACJF and the warden is responsible for the day-to-day operations of ACJF. Defendants cannot at once argue that the county executive and the Board lack final decision-making authority by noting the responsibility of the warden for policies at ACJF and deny that a policy or custom adopted by the warden is sufficient to impose liability on the county. Further, as noted in Duran v. Merline, 923 F. Supp. 2d 702 (D.N.J. 2013), "the Third Circuit has recognized that such long-standing conditions of confinement may reflect the existence of a custom for 1983 purposes." Duran, 923 F. Supp. 2d at 717 (citing Anela v. City of Wildwood, 790 F.2d 1063, 1069 (3d Cir. 1986); Bowers v. City of Phila., Civ. 06-3229, 2008 WL 5210256, *6 (E.D. Pa. Dec. 12, 2008)).

custom of overcrowding. The issue is whether a reasonable jury could conclude that Plaintiff's constitutional harms were caused by the County's custom of overcrowding its jail. Resolution of this question requires the Court to consider the effect of its ruling on Defendants' motion in limine, precluding Plaintiff from testifying as to the cause of his MRSA infection.

**B. Punishment under the Fourteenth Amendment**

Defendants reprise many of their arguments raised in their first motion for summary judgment. The Court will only address Defendants' arguments to the extent the Court's reasoning is affected by its decision to preclude Plaintiff from testifying as to the cause of his MRSA infection.

In addressing Defendants' first motion for summary judgment, the Court allowed Plaintiff's claims to proceed despite a lack of expert testimony. The Court reasoned that "[i]t can reasonably be inferred that Plaintiff contracted MRSA while in Defendants' custody due to the unsanitary, overcrowded cell arrangements that he describes, due to Defendants' application of the new-man-in-the-boat policy in disregard of medical orders. Such an inference is not compelled but it is reasonably based upon common knowledge even without the aid of expert witness testimony. Whether a jury is persuaded to agree remains to be seen at trial." (Id. at *23 n.7.).

18

However, the Court reconsidered this reasoning in granting Defendants' motion in limine to preclude Plaintiff from offering lay testimony as to causation. The Court found that Plaintiff may not offer lay testimony at trial as to medical causation because causation of an infection such as MRSA is beyond the ken of a lay jury and requires expert testimony.[5] See Malles v. Lehigh Cnty., 639 F. Supp. 2d 566, 581 (E.D. Pa. 2009) (granting summary judgment to defendant where plaintiff presented no expert report or other evidence that prison conditions caused MRSA infection under deliberate indifference framework of the Eighth Amendment); Hannah v. United States, 523 F.3d 597, 601-02 (5th Cir. 2008) (requiring expert testimony to establish the applicable standard of care with respect to the treatment of MRSA and to show how the care [plaintiff] received breached that standard in medical malpractice action against the Federal Bureau of Prisons); Lee v. Bureau of Prisons, Civ. 10-033, 2012 WL 1867345, at *4 (N.D. Tex. May 23, 2012) (noting in negligence action that "the matters of whether [plaintiff] should have been housed in [special housing unit] and whether such placement could lead to the exposure to MRSA are not matters of common knowledge or within the experience of a layman"); Lindsey v.

_____

[5] The Court also precluded Plaintiff from presenting as evidence the medical articles identified in the JFPTO, including articles from the Centers for Disease Control and Prevention and the Mayo Clinic, because they are hearsay not within any exception to Fed. R. Ev. 802.

Bowlin, Civ. 07-3067 (EFM), 2011 WL 723040, at *2 (D. Kan. Feb. 23, 2011) (requiring expert testimony to determine causal connection between medical treatment and contraction of MRSA and Hepatitis C in medical malpractice action against medical personnel at federal prison). Accordingly, the Court granted Defendants' motion in limine and barred Plaintiff from offering his opinion as to how he acquired MRSA, how it manifested, how it is transmitted, and how it may affect him in the future. Those are issues of expert opinion for a medical expert in the field of infectious disease.

    The Court remains guided by the Third Circuit's decision in Hubbard v. Taylor, 538 F.3d 229 (3d Cir. 2008), for the purposes of the instant motion. In concluding that Plaintiff had presented evidence of conditions worse than those imposed on pretrial detainees in Hubbard, the Court emphasized that Plaintiff was diagnosed with MRSA within the first three weeks of sleeping on the boat. However, the Court now recognizes that the present record is insufficient for a reasonable factfinder to conclude that Plaintiff contracted MRSA as a result of the allegedly unconstitutional conditions at ACJF or that contracting MRSA was a substantial risk of the alleged conditions at ACJF. This is not a case where prison officials were deliberately indifferent to a MRSA outbreak at the jail. See Duvall v. Dallas Cnty., Tex., 631 F.3d 203, 208 (5th Cir.

2011) (affirming jury verdict on conditions of confinement claim where "[t]he jury heard evidence that the Jail experienced around 200 infections per month" and "[t]he record also establishe[d] that the County's awareness of [serious outbreaks of MRSA in the jail for at least three years] preced[ing] [plaintiff's] confinement."). In fact, both parties at oral argument on Defendants' motions in limine expressly disclaimed any evidence of other cases of MRSA at ACJF during the relevant time period. Nor is the present record such that a jury could determine that it is more likely than not that Plaintiff's MRSA was caused by the allegedly unconstitutional conditions at ACJF and not the presence of bacteria in the dining hall, the showers, the infirmary, a fellow inmate or visitor, or a pre-existing condition such as the gunshot or the hospital treatment for it. These are all plausible sources of MRSA infection, but only one – contracting MRSA from overcrowded and unsanitary triple-celling of a pretrial detainee recovering from a gunshot wound – is actionable here as a constitutional violation. Without expert testimony substantiating a causal link between the allegedly unconstitutional conditions at ACJF and Plaintiff's MRSA diagnosis, Plaintiff is unable to show a cognizable injury.

In Hubbard, the Third Circuit emphasized that the record did not "substantiate Plaintiffs' claims that the use of floor

mattresses resulted in disease or the splashing of human waste upon them." Hubbard, 538 F.3d at 235. In contrast, Judge Renee Bumb, in Duran, distinguished the conditions at ACJF from those in Hubbard and noted that "Plaintiff has corroborated his claim with letters, grievance forms, and his own affidavit. Plaintiff also proffered evidence concerning additional problems such as very limited recreational time (only once a week), extreme noise, violence, and the spread of disease." Duran v. Merline, 923 F. Supp. 2d 702, 716 (D.N.J. 2013). The present record is not so developed and Plaintiff has made no such proffer. Instead, in the absence of expert testimony regarding Plaintiff's MRSA diagnosis or the likelihood of contracting MRSA in light of the alleged conditions at ACJF, the facts in the present action are more akin to those in Tapp where plaintiff failed to present evidence of injury caused by allegedly unconstitutional conditions of confinement. Tapp v. Proto, 718 F. Supp. 2d 598, 618 (E.D. Pa. 2010), aff'd, 404 F. App'x 563 (3d Cir. 2010) (granting defendants motion for summary judgment on plaintiff's conditions of confinement claim based on triple-celling where plaintiff did "not allege that he suffered any injuries other than general irritation from the triple-bunk conditions").[6] In other words, conjecture or surmise about the

---

[6] Further, in Keller, the Third Circuit in a non-precedential case decided before Hubbard, affirmed a jury verdict rendered in

source of Plaintiff's infection would not suffice to carry Plaintiff's burden of proving medical causation at trial. Additionally, the record remains unclear whether the County's custom of overcrowding its jail caused the alleged constitutional harms.

In light of the foregoing, the Court will grant Plaintiff leave to retain an expert and submit a medical expert report regarding the cause of Plaintiff's MRSA diagnosis, as well as the likelihood of contracting MRSA in light of the alleged

---

plaintiffs' favor on their unconstitutional conditions of confinement claims. Keller v. Cnty. of Bucks, 209 F. App'x 201, 203 (3d Cir. 2006). Both plaintiffs were pre-trial detainees who contracted MRSA which required them to be hospitalized during their prison stays. Id. Evidence in the record established that "filthy water pooled in the showers, water seeped into the cells, clean laundry was not always readily available, the mattresses were stained, and mildew grew on walls covered in peeling paint." Id. at 206. The trial court found that "[t]he jury also had a more than sufficient basis for concluding that Defendants through deliberate indifference allowed conditions in the facility that were likely to cause disease, injury, or suffering" and noted that defendants failed to take "necessary steps to minimize the number of inmates affected, for example by keeping the showers and food handling areas in a sanitary condition and instructing inmates on how to avoid the spread of infectious diseases." Id. Nevertheless, the Third Circuit noted that "the facts alleged here barely fulfill the minimum requirements of a conditions of confinement claim, and caution that situations of even slightly lesser magnitude would likely be an abuse of discretion as a result of improper application of law to fact." Id. at 207. In the present case, the basis for claiming deliberate indifference to basic sanitation needs is considerably less than in Keller.

conditions at ACJF.[7] Rule 56(e)(1), Fed. R. Civ. P., provides

that "[i]f a party fails to properly support an assertion of

fact or fails to properly address another party's assertion of

fact as required by Rule 56(c), the court may: (1) give an

opportunity to properly support or address the fact[.]" The 2010

Advisory Committee Notes to subdivision (e) state that

> summary judgment cannot be granted by default even if there
> is a complete failure to respond to the motion, much less
> when an attempted response fails to comply with Rule 56(c)
> requirements. Nor should it be denied by default even if
> the movant completely fails to reply to a nonmovant's
> response. Before deciding on other possible action,
> subdivision (e)(1) recognizes that a court may afford an
> opportunity to properly support or address the fact. In
> many circumstances this opportunity will be the court's
> preferred first step.

Federal Civil Judicial Procedure & Rules 258 (Thomson Reuters,

2013 Revised Ed.). In the present case, because the Court's

previous summary judgment opinion incorrectly implied that

Plaintiff's claims could succeed without expert testimony, the

Court will grant Plaintiff leave to supplement the record within

45 days with an expert report expressing an opinion regarding

the cause of Plaintiff's MRSA infection and the likelihood of

contracting MRSA in light of the alleged conditions at ACJF. If

Plaintiff has obtained no such expert's report within the 45-day

period, the record on this summary judgment motion will be

---

[7] Plaintiff's counsel should consult Appendix H of the Local
Rules with regard to the process for seeking reimbursement for
certain litigation expenses from the pro bono fund.

complete. If Plaintiff timely furnishes such an expert's report, Defendants will be given 45 days to proffer a rebuttal expert's report if they choose to do so.

## V.    CONCLUSION

Defendants' motion for summary judgment will be granted in part and deferred in part. The Court will grant Defendants' motion to the extent Plaintiff asserts claims against the Atlantic County Board of Chosen Freeholders. The Court will defer Defendants' motion as it pertains to Plaintiff's claim that the conditions of confinement at ACJF constituted punishment under the Fourteenth Amendment. Plaintiff will be granted 45 days, pursuant to Fed. R. Civ. P. 56(e)(1), in which to furnish the Court, and opposing counsel, with an expert report expressing an opinion regarding the cause of Plaintiff's MRSA infection and the likelihood of contracting MRSA in light of the alleged conditions at ACJF. If so, Defendants will have 45 days thereafter to furnish a rebuttal expert's report. An accompanying Order will be entered.


**April 28, 2014**                               **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 Chief U.S. District Judge