IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARLON D. HARGIS, JR., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| | Civil Action |
| v. | No. 10-1006 (JBS/JS) |
| ATLANTIC COUNTY JUSTICE FACILITY, ET AL., | **OPINION** |
| Defendants. | |

APPEARANCES:

Salvatore J. Siciliano, Esq.
SICILIANO & ASSOCIATES, LLC
16 South Haddon Avenue
P.O. Box 25
Haddonfield, NJ 08033
    Attorney for Plaintiff Marlon D. Hargis, Jr.

James T. Dugan, Esq.
ATLANTIC COUNTY DEPARTMENT OF LAW
1333 Atlantic Avenue
8th Floor
Atlantic City, NJ 08401
    Attorney for Defendant Dennis Levinson (improperly pleaded
    as Dennis Levison)

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

Plaintiff Marlon D. Hargis, Jr., a pretrial detainee admitted to the Atlantic County Justice Facility ("ACJF") in 2009 with a gunshot wound, alleges that his constitutional rights under the Fourteenth Amendment were violated as the result of being forced to live in overcrowded and unsanitary

conditions at ACJF, including sleeping on the floor of his cell next to the toilet and being diagnosed with a methicillin-resistant Staphylococcus aureus ("MRSA") infection allegedly contracted during his confinement.

This matter comes before the Court following supplemental briefing by the parties on Defendants Dennis Levinson (County Executive) and the Atlantic County Board of Chosen Freeholders's second motion for summary judgment [Docket Item 94], which the Court allowed after granting in part and deferring in part Defendants' motion. Summary judgment was granted in favor of Defendant Atlantic County Board of Chosen Freeholders. Hargis v. Atl. Cnty. Justice Facility, Civ. 10-1006 (JBS), 2014 WL 1713461, at *6 (D.N.J. Apr. 28, 2014). The Court deferred decision on Defendants' motion to the extent it is based on Plaintiff's claim that the conditions of confinement at ACJF constituted punishment under the Fourteenth Amendment for which the remaining defendant – the County Executive – could be held liable. Importantly, the Court permitted Plaintiff to retain an expert to offer an opinion regarding the cause of Plaintiff's MRSA infection and the likelihood of contracting MRSA in light of the alleged conditions at ACJF. Both parties having retained experts and submitted supplemental briefs, and the Court having heard oral argument, the remaining aspect of Defendants' motion for summary judgment is now ripe for adjudication.

For the reasons now discussed, the Court will grant Defendants' motion for summary judgment as to Plaintiff's claim that the conditions of confinement at ACJF constituted punishment under the Fourteenth Amendment for which the County Executive could be liable because Plaintiff has failed to identify a County policy or custom that caused his injuries sufficient to establish municipal liability under 42 U.S.C. § 1983.

The sole claim remaining before the Court is Plaintiff's assertion that Atlantic County, through its County Executive Dennis Levinson in his official capacity, is liable for the conduct of jail personnel who lodged Plaintiff in a three-man cell sleeping in a "boat" on the floor contrary to medical orders. The principal issue to be decided is whether Plaintiff has adduced evidence of an unconstitutional custom or policy of the County, as required for municipal liability under 42 U.S.C. § 1983 and Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978), sufficient to defeat Defendants' summary judgment motion by raising a genuine dispute of material fact.

## II. BACKGROUND

### A. Facts

The facts of this case are recounted in detail in the Court's July 10, 2013 opinion addressing Defendants' first motion for summary judgment. See Hargis v. Aramark Corr. Serv.,

LLC, Civ. 10-1006 (JBS/JS), 2013 WL 3465189 (D.N.J. July 10, 2013). The following facts are those necessary to provide context for the instant motion.

Plaintiff was arrested on August 12, 2009 and at the time of his arrest was suffering from a gunshot wound to his right hip. Plaintiff was taken to AtlantiCare Regional Medical Center where he was treated for the gunshot wound. Shortly thereafter, Plaintiff was released into police custody and transported on the same day to ACJF with his gunshot wound bandaged.

When Plaintiff arrived at ACJF, he was examined by medical staff who provided specific instructions to sleep on a lower level/lower bunk, not a "boat" until further notice. A boat is a plastic bed frame with a mattress, sheets and blanket that sits on the floor and is used as a third bunk in cells during periods of overcrowding.

After four days in the medical wing of the jail, on August 16, 2009 Plaintiff was released into the general population with no medical restrictions and assigned to a cell with two other men already confined. Plaintiff was ordered to sleep in a boat in close proximity to the cell toilet, which allegedly resulted in urine and feces splashing on him.

On September 4, 2009, after approximately three weeks of sleeping on a boat, Plaintiff developed two boils which tested

positive for MRSA.[1] Prior to this, Plaintiff never tested positive for MRSA nor experienced any MRSA related symptoms. Plaintiff testified that he slept in a boat for approximately ten to eleven months.

In their supplemental submission, Defendants note Plaintiff's medical records from a previous incarceration at ACJF which document a series of injuries involving skin breakage and irritation. In October, 2008, a police dog bit Plaintiff upon arrest, causing a two-inch laceration. (Def. Supp. Ex. L [Docket Item 122-1.]) Plaintiff was stabbed with an ice pick in his lower right leg around 1999. (Def. Supp. Exs. M & N [Docket Item 122-1.]) He also scraped his knee while playing basketball and complained of raised bumps, rashes, and itchy skin. (Id.)

Warden Cohen certifies that she reviewed the ACJF files pertaining to the five individuals who shared a cell with Plaintiff and none tested positive or received treatment for MRSA. (Def. Supp. Ex. E [Docket Item 122-1] ¶¶ 7-15.) In response to Plaintiff's suggestion that another inmate, Miguel Duran, suffered a MRSA infection at that time, Warden Cohen states that Plaintiff was never housed together with inmate

---

[1] The Court has taken judicial notice, pursuant to Fed. R. Ev. 201, that MRSA is an abbreviation for methicillin-resistant Staphylococcus aureus, a species of bacteria that causes serious suppurative infections and systemic disease.

Miguel Duran between August 12, 2009 and September 4, 2009. (<u>Id.</u> ¶¶ 16-17.)[2]

Defendants also contend that there was at least one case of MRSA identified on August 12, 2009 in the emergency room where Plaintiff was treated before entering ACJF. (Def. Supp. Ex. O [Docket Item 122-1.]) Plaintiff has provided no evidence of other cases of MRSA at ACJF during his confinement there.

### 1. Dr. Alan L. Silverberg, M.D.

Plaintiff relies upon the expert report of Dr. Alan Silverberg, M.D. (Pl. Ex. K [Docket Item 121.]) Dr. Silverberg opines that Plaintiff acquired MRSA as a result of the conditions of his confinement at ACJF and "failure of proper prison procedures." (<u>Id.</u> at 3.) He states that Plaintiff "was placed at increased risk of acquiring MRSA, and did acquire MRSA, as a result of the overcrowded conditions in the prison"

---

[2] Plaintiff's expert, Dr. Silverberg, appears to base his opinion regarding the cause of Plaintiff's MRSA in part on his contact with another inmate, Miguel Duran, during his incarceration at ACJF. Mr. Duran also asserted a claim for unconstitutional conditions of confinement at ACJF. <u>See</u> <u>Duran v. Merline</u>, 923 F. Supp. 2d 702, 714-16 (D.N.J. 2013) (discussing allegations that conditions at ACJF "led to the spread of disease and caused Plaintiff to suffer painful boils, rashes, and back pain"). However, Defendants have proffered evidence that Plaintiff and Mr. Duran did not share a cell between August 12, 2009, when Plaintiff entered ACJF, and September 4, 2009, when Plaintiff was diagnosed with MRSA. Moreover, it does not appear that Mr. Duran ever alleged specifically that he contracted MRSA at ACJF. At his deposition, Dr. Silverberg was unable to identify any support for his understanding that Plaintiff shared a cell with another inmate who was diagnosed with MRSA. (Silverberg Dep., Def. Supp. Ex. D [Docket Item 122] 54:19-58:18.)

as well as the "grossly unsanitary conditions in his cell." (Id. at 4.) Dr. Silverberg also attributes the cause of Plaintiff's MRSA to inadequate prison policies, including the failure to follow the "no boat" instructions from medical staff, failure to adequately screen Plaintiff for MRSA at intake, failure to decolonize Plaintiff for MRSA, failure to institute infection control policies, and failure to conduct a prompt epidemiological evaluation after learning of Plaintiff's contact with Miguel Duran, another inmate who allegedly contracted MRSA at ACJF. (Id.)

Dr. Silverberg's report discusses the injury to Plaintiff as a result of his MRSA infection. Dr. Silverberg notes that roughly half of all people infected with MRSA experience recurrent infections and may spread the microbe to others. (Id.) He also notes that individuals like Plaintiff often experience anxiety about disease transmission and that boils are painful. (Id. at 5.) Dr. Silverberg does not criticize the medical care ACJF provided for Mr. Hargis's gunshot wound or for his MRSA-related skin condition, nor is there any evidence that the condition manifested itself after this episode in 2009.

### 2. Kathleen Casey, M.D.

Defendants submit the expert report of Kathleen Casey, M.D. (Def. Supp. Ex. B [Docket Item 122.]) Dr. Casey opines that it is impossible to determine when Plaintiff acquired MRSA

7

colonization because he could have been colonized for years before manifesting any illness. (Id. at 2.) Dr. Casey is unable to state with any medical certainty that Plaintiff acquired MRSA as a result of the conditions of confinement at ACJF or even that Plaintiff acquired MRSA while he was there. (Id.) She finds it highly unlikely that Plaintiff's assignment to a boat made him any more or less likely to acquire MRSA. (Id.) Moreover, Dr. Casey notes that there is no evidence to suggest that there was an outbreak of MRSA at ACJF during Plaintiff's incarceration, which might have necessitated routine screening of inmates. (Id. at 3.) Dr. Casey does not believe ACJF violated any medical or correctional policies with regard to Plaintiff's treatment nor that Plaintiff acquired MRSA as the result of any action or omission by ACJF. (Id.)

### 3. David S. Kountz, M.D.

Defendants also rely upon the expert report of David S. Kountz, M.D. (Def. Supp. Ex. C [Docket Item 122.]) Dr. Kountz opines that it is impossible to determine the proximate cause of Plaintiff's MRSA with any degree of certainty because there are too many other variables. (Id. at 3.) Dr. Kountz notes that Plaintiff likely had skin-to-skin contact with police and hospital personnel prior to entering ACJF and that there were 60 cases of MRSA diagnosed at AtlantiCare in the two months prior to Plaintiff's treatment in the emergency room. (Id.) Dr. Kountz

believes it is possible that Plaintiff was colonized with MRSA
prior to entering ACJF due to his prior incarcerations and
injuries. (Id.) Dr. Kountz observes that there was no policy at
ACJF that required screening of inmates for MRSA colonization
and thus no evidence of a deviation from jail policies regarding
MRSA. (Id. at 4.) He notes that a 2011 article discussing
recommendations for the prevention of MRSA in correctional
facilities makes no mention of the number of inmates in a cell
or the location of inmates within the cell. (Id. at 3.)

   **B. Procedural background**

   The Court refers to its earlier opinions for a thorough
discussion of the procedural history of this action. See Hargis
v. Aramark Corr. Serv., LLC, Civ. 10-1006 (JBS/JS), 2013 WL
3465189 (D.N.J. July 10, 2013); Hargis v. Atl. Cnty. Justice
Facility, Civ. 10-1006 (JBS), 2014 WL 1713461 (D.N.J. Apr. 28,
2014). It is sufficient to note for present purposes what has
transpired since the Court last addressed Defendants' second
motion for summary judgment. By Opinion and Order entered April
28, 2014, the Court granted in part and deferred in part
Defendants' second motion for summary judgment. [Docket Items 97
& 98.] Having construed Plaintiff's claims against the
individual Atlantic County Freeholders defendants in their
official capacities as a claim against the Board of Chosen
Freeholders and finding that the Board could not be liable under

a theory of municipal liability, the Court granted Defendants'
motion to the extent Plaintiff asserts claims against the
Atlantic County Board of Chosen Freeholders. The Court deferred
Defendants' motion as it pertains to Plaintiff's claim that the
conditions of confinement at ACJF constituted punishment under
the Fourteenth Amendment and granted Plaintiff leave to obtain
an expert regarding the cause of Plaintiff's MRSA infection and
the likelihood of contracting MRSA in light of the alleged
conditions at ACJF. After retaining experts, both parties
submitted supplemental briefs on the remaining aspect of
Defendants' motion. [Docket Items 121 & 122.] The Court heard
oral argument on December 4, 2014.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving
party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986). A fact is "material" only if it might affect the outcome
of the suit under the applicable rule of law. Id. Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment. Id. The Court will view any evidence in favor
of the nonmoving party and extend any reasonable favorable

10

inferences to be drawn from that evidence to that party. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007).

**IV.  DISCUSSION**

Plaintiff argues in his supplemental submission that Dr. Silverberg's report is sufficient to create a genuine dispute of material fact regarding the cause of Plaintiff's MRSA infection. Plaintiff contends that Dr. Silverberg's report establishes a causal connection between Plaintiff's MRSA infection and the conditions of confinement at ACJF and thus precludes summary judgment as to Plaintiff's Fourteenth Amendment claim. Defendants respond by arguing that Plaintiff's claim must fail because Dennis Levinson is an improper defendant. Defendants also argue that Dr. Silverberg's report is inadmissible and should not be considered because it is unreliable, fails to fit the facts of the case, and asserts an improper net opinion.

Despite the various arguments raised and the extensive record compiled by the parties, the issue before the Court is quite narrow: whether Plaintiff has identified a policy or custom of the County which caused constitutional injury. Having construed claims against Dennis Levinson in his official capacity as claims against Atlantic County and having dismissed all other claims against the named defendants, Plaintiff's only remaining claim is one of municipal liability under <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).

11

It is well-established that municipal liability under §
1983 "may not be proven under the respondeat superior doctrine,
but must be founded upon evidence that the government unit
itself supported a violation of constitutional rights."
Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing
Monell, 436 U.S. 658). As a consequence, a municipality is
liable under § 1983 only when "execution of a government's
policy or custom, whether made by its lawmakers or by those
whose edicts or acts may fairly be said to represent official
policy, inflicts the injury." Monell, 436 U.S. at 694; Pembaur
v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality
opinion) ("[M]unicipal liability under § 1983 attaches where—and
only where—a deliberate choice to follow a course of action is
made from among various alternatives by the official or
officials responsible for establishing final policy with respect
to the subject matter in question.").

The Third Circuit has neatly defined "policy" and "custom"
for the purposes of municipal liability:

> A policy is made "when a decisionmaker possess[ing] final
> authority to establish municipal policy with respect to the
> action issues a final proclamation, policy or edict."
> Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)
> (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481,
> 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).
> A custom is an act "that has not been formally approved by
> an appropriate decisionmaker," but that is "so widespread
> as to have the force of law." [Bd. of County Comm'rs of
> Bryan County v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382,
> 137 L.Ed.2d 626 (1997)].

12

Natale v. Camden County Correctional Facility, 318 F.3d 575, 584

(3d Cir. 2003). The offending "policy" or "custom" must be tied

to the responsible municipality.

> There are three situations where acts of a government
> employee may be deemed to be the result of a policy or
> custom of the governmental entity for whom the employee
> works, thereby rendering the entity liable under § 1983.
> The first is where the appropriate officer or entity
> promulgates a generally applicable statement of policy and
> the subsequent act complained of is simply an
> implementation of that policy. The second occurs where no
> rule has been announced as policy but federal law has been
> violated by an act of the policymaker itself. Finally, a
> policy or custom may also exist where the policymaker has
> failed to act affirmatively at all, though the need to take
> some action to control the agents of the government is so
> obvious, and the inadequacy of existing practice so likely
> to result in the violation of constitutional rights, that
> the policymaker can reasonably be said to have been
> deliberately indifferent to the need.

Id. (internal punctuation and citations omitted). Whether a

policy or a custom, "The plaintiff must also demonstrate that,

through its deliberate conduct, the municipality was the 'moving

force' behind the injury alleged." Bd. of the County Comm'rs,

520 U.S. at 404. Thus, for a plaintiff to sufficiently

demonstrate municipal liability under § 1983, he or she must

present facts to support a finding that execution of a specific

policy or custom, or the directive of the municipality's final

decision maker, caused the alleged harm.

In the present case, Plaintiff's counsel at oral argument

abandoned the theory that Plaintiff's constitutional harms were

13

caused by the County's custom of overcrowding its jail. With the record more fully developed, it is now clear that Plaintiff's claims are premised on ACJF's failure to comply with the "no boat" restriction imposed by medical staff upon his admission to ACJF. If Plaintiff's injury was allegedly caused by deviating from the medical staff's "no boat" directive, as Plaintiff alleges, that amounts to a negligent operational decision by corrections staff in Plaintiff's particular case, and not a custom or policy to which he was subjected. Plaintiff's claims sound in negligence, but he is not asserting, and never has asserted, claims of medical malpractice or deliberate indifference to his medical needs.[3]

Moreover, a claim of operational negligence in jail conditions, even if the inmate is injured, does not rise to the level of a constitutional violation under § 1983. See Daniels v. Williams, 474 U.S. 327, 335-36 (1986) (holding that the negligent conduct of prison personnel in leaving a pillow on the prison stairs, causing plaintiff to fall and injure his back and ankle, was insufficient to constitute a due process violation

---

[3] As the question is not presented, this Court expresses no opinion as to the viability of such claims under these circumstances. Nor does the Court condone the overcrowded and unsanitary conditions at ACJF as alleged. But Plaintiff no longer asserts, and he has not developed evidence, that ACJF's custom of housing a third person in a two-man cell by use of the sleeping "boat" amounts to a policy violating the constitution's protections against cruel and unusual punishment or a deprivation of liberty without due process of law.

under the Fourteenth Amendment); Davidson v. Cannon, 474 U.S. 344, 348 (1986) (concluding that negligence or lack of due care by prison officials did not violate Fourteenth Amendment where plaintiff was attacked by another inmate and suffered substantial injuries). Section 1983 does not provide a remedy for a prisoner's injury that is not the result of a constitutional violation.

Furthermore, a governmental entity – here, the County Executive – is not liable under § 1983 for the unconstitutional acts of subordinates merely because he is the top county official; § 1983 does not recognize liability of a municipality or its chief executive based on respondeat superior. See Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014); Hakim v. Levinson, Civ. 08-4012 (JBS), 2008 WL 4852612, at *3 (D.N.J. Nov. 3, 2008) (dismissing plaintiff's claims against the County Executive and County Freeholders, among others, where the claims appeared to be based solely on the theory of respondeat superior).

Thus to prevail under § 1983 against the County Executive in his official capacity – which is the same as naming the County itself – Plaintiff must demonstrate that the County or its leader adopted a custom or policy that deprived Plaintiff of a constitutional right, as discussed above.

Plaintiff's sole remaining claim is against the County and requires identification of a policy or custom behind which the County was the moving force. Plaintiff has failed to identify such a policy and has, indeed, explicitly disclaimed this theory of the case. Although the Court in its previous opinions recognized the prospect that Plaintiff could adduce sufficient evidence in the record for a reasonable fact finder to identify a municipal custom of indifference to the unconstitutional conditions of confinement at ACJF, Hargis, 2013 WL 3465189, at *12, it has become clear after completion of discovery, including expert reports, that there is no evidence in the record of a County policy or custom that caused Plaintiff's injury in violation of his constitutional rights.

Plaintiff has retained an expert who is well-qualified to opine that his MRSA infection arose while incarcerated at ACJF, and indeed there is a dispute whether Plaintiff contracted MRSA while confined in his cell, which Defendant and the defense experts deny. But the dispute about the origin of Plaintiff's medical condition is not material to the existence or not of an unconstitutional county custom or policy. Dr. Silverberg has not identified any particular unconstitutional policy on the County or even prison level that caused Plaintiff to contract MRSA at

16

ACJF.[4] That Plaintiff may have become infected while in the jail, which must be assumed for purposes of their motion, does not demonstrate that the County had a custom or policy of indifference to serious medical risks. Because no policy has been identified and none is being pursued, Plaintiff's claim against the County must fail.[5] Accordingly, the Court will grant Defendants' motion for summary judgment.[6]

---

[4] Nor is Dr. Silverberg's report sufficient to establish a failure to adopt a particular policy. See, e.g., A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 583 (3d Cir. 2004); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 585 (3d Cir. 2003). Dr. Silverberg admitted during his deposition that he has no knowledge of the policies at ACJF regarding MRSA screening and decolonization. He acknowledged that he did not review the policies and procedures in place at ACJF in 2009. (Silverberg Dep., Def. Supp. Ex. D [Docket Item 122] 47:1-14.) Dr. Silverberg referred only to subsequent Federal Bureau of Prisons Guidelines dated April, 2012 which do not apply by their terms to state or county jails (id. at 62:10-63:1) and "information gleaned from the Internet about policies in Atlantic County, New Jersey." (Id. at 53:9-54:8.) Dr. Silverberg is not an expert on prison procedures (id. at 152:9-12) and has never been employed by a jail, prison, or correctional institution (id. at 30:9-11). Accordingly, even if Plaintiff pursued such a theory, which he does not, it is unsupported by the present record. Moreover, there is no evidence that Plaintiff's MRSA condition at ACJF was part of a grouping of such cases that may provoke greater diligence with screening and disinfecting; it was an unfortunate solitary occurrence at that time.

[5] Despite the outcome, the Court commends Mr. Siciliano as pro bono counsel for Plaintiff for his fine and diligent work in this matter.

[6] Because the Court will grant Defendants' motion for summary judgment on the Monell claim against the County, there is no occasion to reconsider the Court's earlier analysis under Hubbard v. Taylor, 538 F.3d 229 (3d Cir. 2008). Nor need the Court discuss in any detail Defendants' arguments regarding the

**V.    CONCLUSION**

In light of the foregoing, Defendants' second motion for summary judgment will be granted. The Court will enter judgment in Defendants' favor on Plaintiff's only remaining claim for municipal liability against Atlantic County. An accompanying Order will be entered.


| December 16, 2014 | s/ Jerome B. Simandle |
|---|---|
| Date | JEROME B. SIMANDLE |
|  | Chief U.S. District Judge |

---

admissibility of Plaintiff's expert report as to his causation opinion.